[Cite as *Dehlendorf v. Gahanna*, 2015-Ohio-3680.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael A. Dehlendorf, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-379 |
| v. | : | (C.P.C. No. 12CV-12550) |
| City of Gahanna et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 10, 2015

*Michael A. Dehlendorf*, pro se.

*Isaac Wiles Burkholder & Teetor, LLC*, and *Brian M. Zets*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Michael A. Dehlendorf ("appellant"), pro se appeals the April 10, 2014 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, the City of Gahanna, Mayor Rebecca Stinchcomb, Chief Dennis Murphy, Chief Kenneth Bell, Lieutenant Jeff Spence, liaison officer John Fox, Prosecutor Raymond J. Mularski, and Assistant Prosecutor J. Kevin Mantel ("appellees"). For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} The instant matter arises out of a dispute regarding real estate between appellant and David W. Fisher ("Fisher"), a real estate attorney who lived in Gahanna, Ohio. Beginning in 2007, appellant sent numerous emails to Fisher and his wife, Beth

Fisher. Fisher considered the emails harassing in nature and began forwarding the emails to Jeff Spence, a Lieutenant in the City of Gahanna Police Department. Fisher stated that he forwarded the emails in order to make appellant "stop his communications and to put the police department on notice of his e-mails and their threatening nature" in order that his "family and business could be left alone and not to be harassed by [appellant] any further." (David W. Fisher Affidavit, 3.)

{¶ 3} On November 26, 2007, appellant met with Kenneth Bell, the Deputy Chief of the Gahanna police, Dennis Murphy, the Chief of Gahanna's police, and Spence. At that meeting, Spence told appellant to refrain from contacting the Fishers. On December 3, 2007, appellant sent a facsimile transmission to Fisher's place of business, in which he stated that "Mr. Fisher has demanded that I not correspond with him." In the same document, he stated his intention to file a complaint against Fisher with the Disciplinary Counsel of the Supreme Court of Ohio. Appellant stated that his "goal is to let as many people as possible know what kind of person David W. Fisher is and destroy him professionally." (Appellees' Motion for Summary Judgment, Exhibit F.) Throughout 2008, appellant sent numerous communications to Fisher, which Fisher continued to forward to the Gahanna police.

{¶ 4} On November 26, 2008, appellant sent an email to Fisher stating, "I have a surprise for you * * * for the Holidays. You don't need to go 'slithering off' to the Gahanna Police again. The surprise will be embarrassing; that's all." (Appellees' Motion for Summary Judgment, Exhibit G.) Fisher forwarded this email to Spence immediately after receiving it. On November 30, 2008, appellant sent Fisher another email.

{¶ 5} On December 1, 2008, Spence filed two criminal complaints against appellant, charging him with two violations of R.C. 2917.21(A)(5) corresponding with the two emails sent by appellant on November 26 and 30, 2008. On January 12, 2010, the charges against appellant were dismissed.

{¶ 6} On July 9, 2010, appellant filed an action with a federal district court. On September 4, 2012, the district court dismissed appellant's federal claims with prejudice and declined to exercise supplemental jurisdiction over appellant's claims under Ohio law, dismissing them without prejudice.

{¶ 7}   On October 3, 2012, appellant filed a complaint in the trial court against appellees as well as attorney David W. Fisher, Stephen Ross Love, and W. Mark Jump. Appellant's complaint listed seven claims: (1) malicious prosecution, (2) harassment, (3) libel, (4) failure to investigate, (5) filing/signing a false complaint, (6) incitement, and (7) filing a false police report. On October 4, 2012, Fisher filed a motion for a more definite statement pursuant to Civ.R. 12(E), which the trial court granted on November 1, 2012. On November 6, 2012, appellees filed an answer.

{¶ 8}   On November 14, 2012, appellant filed an amended complaint, reasserting all claims except "incitement." On April 30, 2013, the trial court filed a stipulated entry of dismissal reflecting that all claims relating to Fisher, Love, and Jump were dismissed without prejudice. On May 22, 2013, appellees filed an answer to appellant's amended complaint.

{¶ 9}   On September 16, 2013, appellees filed a motion for a protective order, pursuant to Civ.R. 26(C) and Loc.R. 47.01, seeking to prevent appellant from taking a second deposition of Spence and from deposing Katey Powell, a Gahanna employee. On September 23, 2013, appellant filed a memorandum contra appellees' September 16, 2013 motion. On October 2, 2013, a magistrate filed a decision granting appellees' motion for a protective order. On October 14, 2013, appellant filed objections to the magistrate's decision. On October 21, 2013, the trial court overruled appellant's objections and adopted the magistrate's decision granting appellees' motion for a protective order.

{¶ 10} On October 24, 2013, appellees filed a motion for summary judgment. On November 12, 2013, appellant filed a memorandum contra appellees' motion for summary judgment. On April 10, 2014, the trial court granted appellees' motion for summary judgment.

## II. Assignments of Error

{¶ 11} Appellant appeals, assigning the following six errors for our review:

I. The Trial Court erred by permitting the Gahanna Defendants to, in effect, re-try the 2 Municipal Court Criminal Cases brought against [appellant] on December 1, 2008, and dismissed on January 12, 2010.

II. The Trial Court erred when it denied appellant's claims for Malicious Prosecution.

III. The Trial Court erred when it concluded that Appellant lacked evidence that Mularski and Mantel acted with malice or acted with improper purpose in prosecuting Appellant.

IV. The Trial Court erred in deciding that defendants Gahanna, Mayor Stinchcomb, Chief Murphy, Deputy Chief Bell, and Liaison Officer Fox did not participate in a scheme to maliciously prosecute Appellant.

V. The Trial Court erred in determining that Appellant's claim for Libel was barred by the statute of limitations, and that the December 11, 2008, Rocky Fork Enterprise ("RFE") article (Exhibit J) is not blatantly misrepresentative as Appellant contended.

VI. The Trial Court erred in granting Defendants' Motion for Protective Order filed on September 13, 2013 on October 2, 2013.

Because appellant's first, second, third, and fourth assignments of error are interrelated, we address them jointly.

### A. First, Second, Third, and Fourth Assignments of Error

{¶ 12} In his first, second, third, and fourth assignments of error, appellant asserts that the trial court erred by granting summary judgment on his claim for malicious prosecution.

{¶ 13} Because appellant's assignments of error arise out of the trial court's ruling on a motion for summary judgment, we review the court's judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of

the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 15} Ohio has recognized the tort of malicious prosecution to provide a right to recover for the misuse of the criminal and civil process. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, ¶ 9, citing *Pope v. Pollock*, 46 Ohio St. 367, 370-71 (1889). "However, claims for malicious prosecution are not favored at law because they 'act as a restraint upon the right to resort to the courts for lawful redress.' " *Froehlich* at ¶ 9, quoting *Guy v. McCartney*, 7th Dist. No. 00 JE 7, 2002-Ohio-3035, ¶ 18. In the criminal context, public policy supports the position that malicious prosecutions are not favored "in order that criminal investigations are not discouraged and that those who cooperate with law enforcement are protected." *Froehlich* at ¶ 9.

{¶ 16} "The tort of malicious prosecution in a criminal setting requires proof of three essential elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.' " *Id.* at ¶ 10, quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990). The existence of probable cause to support the filing of charges is an absolute defense to an action for malicious prosecution. *Koch v. Ohio Dept. of Natural Resources*, 95 Ohio App.3d 193, 197 (10th Dist.1994), citing *Kinter v. Cheeks*, 71 Ohio App. 333 (1942). "Lack of probable cause generally becomes the essence of a malicious prosecution action because malice may be inferred in the absence of probable cause." *Petty v. Kroger Food and Pharmacy*, 10th Dist. No. 07AP-92, 2007-Ohio-5098, ¶ 20.

{¶ 17} "The determination of whether a criminal prosecution was undertaken in the absence of probable cause entails an inquiry into the facts and circumstances actually known to or reasonably within the contemplation of the defendant police officers at the time of the instigation of criminal proceedings." *Mayes v. Columbus*, 105 Ohio App.3d

728, 737 (10th Dist.1995), citing *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 616-17 (1st Dist.1992). "For purposes of a claim of malicious prosecution, a criminal prosecution was undertaken without probable cause if the defendants instituted or continued the prosecution without a 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged.' " *Mayes* at 737, quoting *McFinley* at 617. *See also Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 27. "The issue of probable cause, while ordinarily one of fact to be resolved at trial, may be determined as a matter of law upon a record that allows for only one reasonable conclusion." *Petty* at ¶ 21, citing *McFinley* at 617, citing *Huber v. O'Neill*, 66 Ohio St.2d 28 (1981).

{¶ 18} The two complaints filed against appellant charged him with telecommunications harassment in violation of R.C. 2917.21(A)(5). R.C. 2917.21 provides in pertinent part:

> (A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
>
> * * *
>
> (5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises.
>
> * * *
>
> (C) (1) Whoever violates this section is guilty of telecommunications harassment.

Pursuant to former R.C. 2901.22(B): "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 19} Here, based upon the facts and circumstances known at the time, reasonable minds could only conclude that Spence possessed a reasonable ground of suspicion that appellant was guilty of the offense with which he was charged. We are supported in our conclusion that the prosecution was undertaken with probable cause by evidence in the record demonstrating the facts and circumstances actually known to or reasonably within the contemplation of Spence at the time he filed charges against appellant.

{¶ 20} First, prior to initiating criminal proceedings, Spence was personally in contact with Fisher and appellant. Spence additionally reviewed the correspondences sent by appellant to Fisher, Fisher's wife, and his business office. Specifically, in his affidavit, Spence stated:

> I reviewed [appellant's] correspondences to David Fisher, Beth Fisher, and Kephart Fisher LLC from August 2007 to November 2008. Based on personal contact and conversations with David Fisher, review of [appellant's] correspondences to the Fishers, my personal knowledge of the facts and circumstances surrounding the situation, and my conversations with [appellant], I filed two criminal complaints against [appellant] on December 1, 2008. Both complaints alleged [appellant] violated Ohio Rev. Code 2917.21(A)(5) (Telecommunications Harassment).

(Jeffrey Spence Affidavit, Motion for Summary Judgment, Exhibit 12.)

{¶ 21} In his deposition, Spence confirmed that Fisher informed appellant to cease contacting him. Specifically, the deposition reflects the following:

> [Appellant]: So the complaint that you signed did state that David W. Fisher had informed me to cease and desist any telecommunications with him during this period of time?
>
> [Spence]: Yes.
>
> [Appellant]: Did Mr. Fisher in fact tell you that?
>
> [Spence]: Yes. In fact, you confirmed it in a communication with us I believe two or three days later.
>
> [Appellant]: Who confirmed it?
>
> [Spence] You did.

[Appellant]: Two or three days later then. What date?

[Spence]: Than December 1st of 2008.

[Appellant]: Are you aware of the fact that during the trial, Assistant Prosecutor Mantel admitted that Mr. Fisher had neither told me or written to me to stop sending E-mails?

[Spence]: No.

(Spence Depo. 11-12.)

{¶ 22} Further, Spence responded affirmatively when he as asked whether he "investigated the representations by Mr. Fisher that he had told [appellant] to cease and desist sending him telecommunications." (Spence Depo., 34-35.) Thus, prior to filing charges against appellant, Spence had reviewed the contents of the communications sent by appellant. Appellant does not dispute that he was the author of the communications at issue, nor does he dispute the contents of the communications.

{¶ 23} Second, appellant himself stated in a facsimile communication to Fisher's business office that Fisher told him to cease communicating. When asked regarding this communication in his deposition, the following dialogue took place:

[Question]: The next paragraph is a single sentence which reads, "Mr. Fisher has demanded that I not correspond with him," correct?

[Appellant]: Yes.

[Question]: And you wrote that because Mr. Fisher, in fact, demanded you not correspond with him, correct?

[Appellant]: That's my recollection.

(Appellant's Depo., 100.)  As Spence had reviewed the communications between appellant and Fisher, including communications sent to his place of business, Spence either knew, or it was reasonably within his contemplation at the time he filed charges, that appellant himself admitted that he was told by Fisher to refrain from communicating with him.

{¶ 24} Third, Spence personally told appellant to refrain from contacting the Fishers. In an email he composed after the meeting, Spence stated that appellant "was again advised to cease and desist all contact with David Fisher and his family." (Motion

for Summary Judgment, Exhibit E.) Further, Spence stated that he "again advised [appellant] not to have any contact with Fisher to include phone calls, faxes, and email." Appellant does not deny that this conversation occurred or that he was specifically instructed to refrain from contacting the Fishers. Although Spence's instruction does not satisfy the requirements of R.C. 2917.21(A)(5), it, along with his own investigation and appellant's statement, nevertheless supports his reasonable belief that appellant was aware of Fisher's request to cease communications.

{¶ 25} Finally, although Fisher states that he never told appellant to refrain from contacting him, he states in his affidavit that it was his purpose in contacting the Gahanna police to cause appellant to cease his communications. Specifically, Fisher states that his "motivation in forwarding [appellant's] e-mails to Lieutenant Spence was to make [appellant] stop his communications and to put the police department on notice of his e-mails and their threatening nature." (Fisher Affidavit, 3.) Further, Fisher stated that "[t]he purpose in engaging the police was so that my family and business could be left alone and not to be harassed by [appellant] any further." (Fisher Affidavit, 3.) In his narrative report created at the time the charges were filed and modified on December 3, 2008, Spence stated: "When the attacks by [appellant] began to escalate to a level that caused Fisher concern for his family's safety, he contacted the Gahanna Division of Police in the Fall of 2007. [Appellant] continued to send facsimile transmissions and emails to Fisher after he advised [appellant] to cease contact with him." (Motion for Summary Judgment, Exhbit H.) Based upon Fisher's stated intentions in his communications with Spence, it was a reasonable inference for Spence to conclude that Fisher had previously asked appellant to cease communicating with him, as evidenced in his narrative report.

{¶ 26} Therefore, based upon the facts and circumstances that were present at the time appellant was charged, we find that Spence possessed a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in the belief that appellant was guilty of the offense with which he was charged. *Mayes* at 737. Therefore, we find that probable cause existed for the crime with which appellant was charged; namely, telecommunications harassment. Although appellant asserts that the evidence in the record "establish[es] that there never were any violations of Ohio Rev. Code 2917.21(A)(5) by Appellant," this misidentifies the standard

present in an action for malicious prosecution. (Appellant's Brief, 3.) Appellees need not demonstrate that appellant would have been convicted at trial of the charged offenses but only that probable cause existed at the time of the offense.

{¶ 27} Therefore, as we find that probable cause existed to support the filing of the charges, we need not reach the first and third elements of malicious prosecution. *Petty* at ¶ 25 (holding that, "[b]ecause reasonable minds may only conclude that appellees had probable cause to initiate criminal proceedings against appellant, appellant's claim for malicious prosecution fails as a matter of law, regardless of whether he can establish the remaining two elements of his claim"); *Pierson v. Aaron's Rental*, 10th Dist. No. 10AP-245, 2010-Ohio-5443, ¶ 37; *Dailey v. First Bank of Ohio*, 10th Dist. No. 04AP-1309, 2005-Ohio-3152, ¶ 20. Because no genuine issue of material fact remained for trial, we find that the trial court did not err by granting summary judgment in favor of appellees with regard to appellant's malicious prosecution claim against Spence.

{¶ 28} We next address appellant's contentions with regard to Raymond Mularski and J. Kevin Mantel, both of whom were prosecutors employed by the City of Gahanna. The trial court found that appellant's claim of malicious prosecution with regard to Mularski and Mantel failed because "[t]he basis for the decision to prosecute Plaintiff was supported by probable cause and was based on facts and circumstances investigated by Lt. Spence. Pros. Mularski's and Pros. Mantel's only interactions with Plaintiff were associated with the judicial phase of Plaintiff's criminal case." (Apr. 10, 2014 Decision, 11.)

{¶ 29} "Prosecutors are considered 'quasi-judicial officers' entitled to absolute immunity granted judges when their activities are 'intimately associated with the judicial phase of the criminal process.' " *McClellan v. Franklin Cty. Bd. of Commrs.*, 10th Dist. No. 08AP-782, 2009-Ohio-3955, ¶ 10, quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "[A] prosecutor has absolute immunity 'in initiating a prosecution and in presenting the State's case.' " *McClellan* at ¶ 10, quoting *Imbler* at 431. Further, R.C. 2744.03(A)(7) provides as follows: "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." "Thus, R.C. 2744.03(A)(7) preserves the absolute immunity available to

prosecutors at common law." *Jopek v. Cleveland*, 8th Dist. No. 93793, 2010-Ohio-2356, ¶ 29.

{¶ 30} Here, we agree with the trial court that probable cause existed to support the filing of charges against appellant. Additionally, appellant fails to point to evidence in the record demonstrating that Mantel and Mularski were involved with his prosecution in any way other than in their capacity as "quasi-judicial officers" by initiating a prosecution and by presenting the case against appellant. Therefore, because probable cause existed to initiate criminal proceedings against appellant and because Mantel and Mularski were entitled to absolute immunity, the trial court correctly granted summary judgment in favor of appellees with regard to appellant's malicious prosecution claim against Mantel and Mularski. *McClellan* at ¶ 10; *Jopek* at ¶ 29.

{¶ 31} Next, we address appellant's contentions with regard to the City of Gahanna, Rebecca Stinchcomb, Dennis Murphy, Kenneth Bell, and John Fox. The trial court found that, with regard to these parties, appellant "pled in generalities" and "[o]ther than Plaintiff's allegation, there is no evidence before the Court that these defendants had any involvement in prosecuting Plaintiff or making any decision to file criminal charges against Plaintiff." (Decision, 11.) After a careful review of the record, we agree with the trial court's conclusion that appellant failed to provide Civ.R. 56(C) evidence demonstrating that a genuine issue of material fact remained for trial with regard to his claims against the City of Gahanna, Stinchcomb, Murphy, Bell, and Fox. Therefore, the trial court properly granted summary judgment with regard to appellant's claim for malicious prosecution against the aforementioned parties.

{¶ 32} Finally, we address appellant's contention that the trial court erred by permitting appellees to "in effect, re-try the 2 Municipal Court Criminal Cases brought against [appellant] on December 1, 2008." We find appellant's contention to be meritless, as it was necessary for the trial court, as it is for this court on appeal, to determine whether probable cause existed in the criminal cases brought against appellant in order to examine his claim for malicious prosecution.

{¶ 33} Accordingly, we overrule appellant's first, second, third, and fourth assignments of error.

**B. Fifth Assignment of Error**

{¶ 34} In his fifth assignment of error, appellant asserts that the trial court erred by determining that his claim for libel was barred by the statute of limitations and that the subject of the libel claim was not misrepresentative.

{¶ 35} Appellant's claim for libel involves the publication of an article on December 11, 2008 in a Gahanna newspaper. The article attributed several statements concerning appellant to Bell. In his amended complaint, appellant alleged that "Bell, under the direction of Gahanna, Stinchcomb and Murphy, gave *THIS WEEK/ROCKY FORK ENTERPRISE* * * * blatantly misrepresentative and grossly false information (which was published) designed to damage and/or destroy [appellant's] reputation." (Amended Complaint, 13.)

{¶ 36} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "Generally speaking, defamation can come in two forms: slander, which is spoken; and libel, which is written." *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 46. " 'To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.' " *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 77, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist.1996).

{¶ 37} Appellant's libel claim is subject to the statute of limitations in R.C. 2305.11(A), which provides that such actions "shall be commenced within one year after the cause of action accrued." Appellant, in his amended complaint, admits that the article in question was published on December 11, 2008 and that he filed his lawsuit in federal court on July 9, 2010, over one year after the publication. (*See* Amended Complaint, 3.) Appellant contends that the statute of limitations should not bar his action for libel since

he did not receive confirmation that Bell made the allegedly libelous statements until a September 17, 2009 stipulation. However, "[t]his court has consistently recognized that ' "[a] cause of action for defamation accrues on the date of publication of the alleged defamatory matter." ' " *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 16, quoting *Stubbs v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-484, 2012-Ohio-1374, ¶ 16, quoting *Pankey v. Ohio Adult Parole Auth.*, 10th Dist. No. 11AP-36, 2011-Ohio-4209, ¶ 9.

{¶ 38} Therefore, the trial court did not err by determining that the one-year statute of limitations set forth in R.C. 2305.11(A) barred appellant's claim for libel. Having found that the trial court correctly granted summary judgment due to the application of the statute of limitations to appellant's claim, we need not examine appellant's arguments regarding the merits of his claim.

{¶ 39} Accordingly, we overrule appellant's fifth assignment of error.

**C. Sixth Assignment of Error**

{¶ 40} In his sixth assignment of error, appellant asserts that the trial court erred by granting appellees' motion for a protective order. Specifically, appellant contends that he should have been permitted to conduct a second deposition of Spence and that his request to conduct a deposition of City of Gahanna employee, Katey Powell, was relevant to his case.

{¶ 41} "Civ.R. 26(B)(1) provides that parties 'may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.' A party must demonstrate relevance to the underlying subject matter in order for discovery to be permissible." *Dehlendorf v. Ritchey*, 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 20. Matters sought in discovery are considered irrelevant "when the information sought will not reasonably lead to the discovery of admissible evidence." *Id.*, citing *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 715 (8th Dist.1994).

{¶ 42} Civ.R. 26(C) provides that a trial court may grant a protective order relating to discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Absent an abuse of discretion, an appellate court may not overturn a trial court's decision on discovery matters. *Dehlendorf* at ¶ 21, citing *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 397 (8th Dist.1994), citing *Vinci v.*

*Ceraolo*, 79 Ohio App.3d 640 (8th Dist.1992). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 43} With regard to Spence, appellees asserted that the protective order should be granted to prevent annoyance and undue burden since appellant had already interviewed Spence on June 9, 2011 regarding the same topics he sought to cover in the second deposition. Appellant argues that it was necessary to depose Spence a second time in order to question discrepancies between Spence's deposition testimony and Fisher's January 6, 2012 affidavit. Appellant also sought to depose Spence to question him regarding whether an assault complaint had ever been filed against Murphy. Finally, appellant sought to depose Spence regarding appellant's arrest record.

{¶ 44} The trial court found that a second deposition of Spence was not necessary to discuss alleged discrepancies between Spence's testimony and Fisher's affidavit, as such matters could be brought up at trial. The trial court also found that appellant failed to demonstrate how interviewing Spence regarding an assault report against Murphy was relevant to appellant's claims. Finally, the trial court found that appellant had already questioned Spence regarding appellant's arrest record. Thus, the trial court found that appellant failed to show good cause to depose Spence for a second time.

{¶ 45} As we cannot agree that the trial court acted unreasonably, arbitrarily, or unconscionably by finding that appellant failed to demonstrate how a second deposition of Spence would be reasonably calculated to lead to the discovery of admissible evidence to appellant's claims, we find that the trial court did not abuse its discretion by granting a protective order regarding appellant's proposed deposition of Spence. Civ.R. 26(C); *Dehlendorf* at ¶ 23.

{¶ 46} With regard to Powell, appellees contended that appellant failed to demonstrate how deposing Powell would bear any relation to appellant's claims. Appellant argued that he wished to interview Powell regarding a "pattern of missing, inaccurate, and/or non existent Police Records which appear to establish a pattern of deceit and deception." (Appellant's Sept. 23, 2013 Memorandum in Opposition, 4.) The trial court found that appellant provided no explanation as to how the deposition of

Powell "would be reasonably calculated to lead to the discovery of admissible evidence relating to Plaintiff's claims." (Oct. 2, 2013 Magistrate's Decision, 3.) Further, the trial court found that appellant's request to depose Powell was, in effect, an attempt to obtain documentation that Powell allegedly possessed and that appellant therefore should have filed a request for production of documents pursuant to Civ.R. 34. As we cannot agree that the trial court acted unreasonably, arbitrarily, or unconscionably by finding that appellant failed to demonstrate how the deposition of Powell would be reasonably calculated to lead to the discovery of admissible evidence to appellant's claims, we find that the trial court did not abuse its discretion by granting a protective order regarding appellant's proposed deposition of Powell.

{¶ 47} Accordingly, we overrule appellant's sixth assignment of error.

## III. Disposition

{¶ 48} Having overruled appellant's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and LUPER SCHUSTER, JJ., concur.

_____