[Cite as *State v. Valentino*, 2025-Ohio-4711.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 2024CA0104-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLAS J. VALENTINO | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 2024CR0197 |

DECISION AND JOURNAL ENTRY

Dated: October 14, 2025

CARR, Judge.

{¶1} Defendant-Appellant Nicholas Valentino appeals the judgment of the Medina County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} In this appeal, Valentino challenges his convictions on six counts of telecommunications harassment. The victim is Valentino's father, H.V.

{¶3} In October 2023, Valentino texted H.V., "You're more crooked than the cops, lawyers & judges. You're a traitor & you're going to burn old man[.]" H.V. texted him back, stating, "From henceforth stop all forms of communication with me. This disrespectful, abusive behavior is beyond belie[f] and beyond acceptable." Valentino responded to H.V.'s text with text messages including, "You are a coward Nazi[,]" and "You're the abuser. You and your cohorts ruined my life."

{¶4} Despite the text from H.V. telling Valentino not to communicate with him, Valentino continued to call H.V. In November 2023, H.V. blocked his son's calls, but did not realize the voicemails were still being recorded and they filled up his voicemail box.

{¶5} In February 2024, H.V. contacted the Medina County Prosecutor's Office requesting that Valentino be told to stop contacting him due to Valentino's continued extensive and harassing communications. Valentino was incarcerated in the Medina County Jail at the time on other charges and was leaving voicemails on H.V.'s phone from the jail. H.V. described his son's communications with him as "hostile, angry, upset" and "very, very disrespectful[,] and hurtful[.]" H.V. did not want to speak to his son, so he asked the prosecutor's office to convey the message to Valentino to stop calling him. The prosecutor's office contacted Deputy Steven Clark, who was the court liaison for the Medina County Sheriff's Office, and asked him to tell Valentino not to contact H.V. On February 16, 2024, Deputy Clark walked to the jail pod where Valentino was housed and told him the prosecutor's office said Valentino was not allowed to call his father again. Deputy Clark told Valentino, "[your father] doesn't want to talk to you." Ten minutes later, Deputy Clark received information from the prosecutor's office that Valentino was again calling his father after being told he was not to call. Valentino left H.V. a total of seven voicemails on February 16, 17, 18, and 19, 2024. Valentino left four voicemails on February 17, and one voicemail on each of the other days.

{¶6} The Medina County Grand Jury indicted Valentino on six counts of telecommunications harassment, in violation of R.C. 2917.21(A)(5) and (C)(2), felonies of the fifth degree, and one count of telecommunications harassment, in violation of R.C. 2917.21(A)(1) and (C)(2), a felony of the fifth degree. Counts one through six concerned the calls made on February 16, 17, and 18, 2024. Count seven concerned the call made on February 19, 2024. The

indictment specified that Valentino had previously been convicted of, or pled guilty to, a violation of R.C. 2917.21. Valentino pleaded not guilty to the charges, and the matter proceeded to a jury trial. The jury found Valentino guilty on counts one through six, together with a finding on each count that Valentino had previously been convicted of telecommunications harassment, but was unable to reach a verdict on count seven. The trial court declared a mistrial on count seven, which was subsequently dismissed by the State.

{¶7} The trial court sentenced Valentino to a 12-month term of incarceration on each count, to be served concurrently with one another and consecutively to the sentence imposed in Case No. 2023CR0797.[1]

{¶8} Valentino has appealed, raising two assignments of error for our consideration. To facilitate our analysis, we will consider Valentino's assignments of error out of order.

II.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST [] VALENTINO IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 AND 16 OF THE OHIO CONSTITUTION.**

{¶9} Valentino argues in his second assignment of error that the evidence to prove telecommunications harassment was insufficient.

{¶10} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v.*

---

[1] Valentino was convicted of menacing by stalking, in violation of R.C. 2903.211(A)(1),(B)(2)(g), a felony of the fourth degree, in Medina County Common Pleas case no. 2023CR0797 and was sentenced to a 12-month term of incarceration with credit for 190 days served. This Court affirmed that judgment in *State v. Valentino*, 2025-Ohio-2721 (9th Dist.).

*Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶11} R.C. 2917.21(A)(5) provides:

No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:

. . .

Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises[.]

{¶12} A person acts "knowingly" when:

regardless of purpose, . . . the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶13} Valentino argues he was told by Deputy Clark not to call H.V., but because Deputy Clark is not his father or "another person at the premises[,]" the State has not presented sufficient

evidence that Valentino knowingly made telephone calls to H.V. after being told by H.V. or another person at the premises that he was not to call H.V. Valentino further argues he never received the October 2023 text from H.V. telling him not to communicate with him.

{¶14} Deputy Clark testified he told Valentino on February 16, 2024, to stop calling his father and his father did not want to talk to him. H.V. testified he texted his son in October 2023 telling him to stop all forms of communication with him and testified Valentino left him six voicemails between February 16 and 18, 2024. The voicemails were played for the jury and images of the October 2023 text exchange between Valentino and H.V. were admitted as an exhibit at trial. Valentino admitted at trial that he called H.V.'s number and left voicemails in February 2024. When asked if he called his father's number, Valentino testified, "yeah, so I did make some of those calls," and "I made calls, I talked, I said those things. I'm not going to deny that." While many of the comments made by Valentino on the voicemails were directed to the prosecutor's office, when asked why he did not call the prosecutor's office directly, Valentino answered, "I didn't have the number." Valentino explained he knew the calls from the jail were being recorded and he was "negotiating."

{¶15} Therefore, there is evidence that Valentino knowingly called his father's number and left voicemails, once on February 16, 2024, four times on February 17, 2024, and once on February 18, 2024, and evidence he had been told by his father in October 2023 not to communicate with him. In addition, on February 16, 2024, Valentino was told by Deputy Clark he was not allowed to call his father because his father did not want to talk to him. Valentino denies he received the October 2023 text from his father telling Valentino to stop communicating with him and also denies that some of the calls occurred during the time frame set forth in the indictment. However, viewing the evidence and all reasonable inferences in favor of the State, as

we must, we conclude the evidence is sufficient to establish Valentino knowingly called his father and left him six voicemails *after* being told by his father via text to not communicate with him and *after* being re-told by Deputy Clark that he was not allowed to call his father and his father did not want to talk to him. We need not reach Valentino's argument that Deputy Clark's instruction to Valentino that he was not allowed to call his father and that his father did not want to talk to him would not, standing alone, be sufficient to satisfy the element that H.V. told him not to communicate with him. However, Deputy Clark's statements to Valentino do support that Valentino was *aware* that he was not supposed to communicate with his father and his father did not wish to speak to him, as communicated to Valentino by his father via text message months before. *See Dehlendorf v. Gahanna*, 2015-Ohio-3680, ¶ 25 (10th Dist.).

{¶16} Accordingly, Valentino's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**[] VALENTINO'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [] IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.**

{¶17} In his first assignment of error, Valentino argues his convictions for telecommunications harassment are against the manifest weight of the evidence.

{¶18} This Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the

appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶19} An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶20} Valentino claims he did not know he was not supposed to call his father, denying he had a text exchange with his father in October 2023. H.V. testified that he texted his son at the number saved in his phone as Valentino's number. Valentino testified his phone was stolen and had been turned off. When asked if he had made a police report of the theft, Valentino became argumentative and did not answer the question. H.V. testified the text messages he received from his son's phone in October 2023 were consistent with things his son had said to him over the years, such as accusing his father of ruining his life. Valentino testified that some of the February 2024 calls to his father's number were not made on the dates listed in the indictment. However, the jury heard the testimony of both Valentino and H.V. concerning the October 2023 text exchange and the February 2024 voicemails and determined the credibility of the testimony when reaching the verdict. A verdict is not against the manifest weight of the evidence simply "because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).

{¶21}   Having reviewed the record in this matter, we cannot say that this is the exceptional case where the jury lost its way.  Accordingly, Valentino's first assignment of error is overruled.

III.

{¶22}   For the forgoing reasons, Valentino's assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

PAUL M. GRANT, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.