OPINION
{¶ 1} Plaintiff, Daisy Potter, was enrolled beginning in May 2004 as a student in a practical nursing educational *Page 2 
course of study maintained by Defendant, RETS Tech Center, Co. Inc. ("RETS"), a proprietary school.
 {¶ 2} On February 15, 2005, Potter was given a clinical assignment to work at the Heartland of Beavercreek nursing facility under the direction of a RETS instructor, Amy Kowalski. The two had a disagreement, and Kowalski twice grabbed Potter's arm and wrist when Potter walked away.
 {¶ 3} Potter called Beavercreek Police, and a dispatch was made to the Heartland of Beavercreek facility. Kowalski was arrested and charged with assault on Potter's complaint, and was transported to jail. Kowalski subsequently pled guilty to a charge of attempted assault.
 {¶ 4} Following Kowalski's arrest, RETS director of nursing Donna Siegrist notified Potter that she was dismissed as a student at the RETS school. The following day, Potter filed a written grievance with the school. She also filed a complaint with the Ohio Board of Nursing complaining of Kowalski's conduct.
 {¶ 5} On February 21, 2005, Potter and her husband met with Siegrist, who advised them that Potter was also suspended for a HIPPA violation of a patient's privacy rights arising from the use of a tape recorder when a patient's treatment was being discussed. Siegrist further advised the Potters that *Page 3 
Potter could be readmitted to the RETS school upon satisfying several conditions, one of which was to agree to hold the RETS school harmless in connection with Potter's dismissal as a student. Potter rejected the offer and filed another grievance.
 {¶ 6} Following the second grievance, the parties agreed that Potter would be readmitted upon execution of a hold harmless agreement. They executed an agreement, which provides:
 {¶ 7} "Whereas, I Daisy Potter, in consideration of the events which took place on February 15, 2005, at Heartland of Beavercreek resulting from the actions and arrest of their then employee Amy Kowalski. I desire to hold harmless Rets Tech Center with respect to Amy Kowalski's actions.
 {¶ 8} "In accepting this agreement, Rets Tech Center agrees to grant me the opportunity to resume my education, free from repercussions of the events involving Amy Kowalski February 15, 2005."
 {¶ 9} Potter returned to her classes at the RETS school. However, the school subsequently notified Potter that she was on probation because her grades were low and because of the alleged HIPPA violation mentioned before. Potter protested the notice, and subsequently filed another grievance. She *Page 4 
also wrote two additional letters to the school, invoking the terms of their hold harmless agreement and the terms of her reinstatement.
 {¶ 10} On March 16, 2005, the RETS school again terminated Potter as a student in its practical nursing program. The written notice of dismissal states:
 {¶ 11} "As a result of an investigation that you have initiated related to the incident of February 2005 at Heartland of Beavercreek, you are hereby suspended indefinitely from this program."
 {¶ 12} On October 11, 2005, Potter and her husband commenced an action in the court of common pleas against the RETS school and four of its employees, including Siegrist and Kowalski. The Potters' complaint alleges claims for relief for assault, intentional and negligent infliction of emotional distress, negligence in hiring, training, and supervision of employees, defamation, fraud, breach of contract, unlawful retaliation, and a request for compensatory and punitive damages.
 {¶ 13} The Defendants filed responsive pleadings and, following an avalanche of other motions and applications, both sides filed motions for summary judgment. On January 16, 2007, in a thirty-six page decision, the trial court granted *Page 5 
summary judgments on some claims or defenses but denied summary judgments that were requested on others. The trial court entered a Civ.R. 54(B) certification on its decision. The Defendants filed timely notices of appeal. Potter filed a notice of cross-appeal.
 {¶ 14} The two sides of the dispute each moved to dismiss the appeal of the other. In a decision and judgment entry dated July 18, 2007, we dismissed the appeals filed by the Defendants for lack of a final appealable order. We also dismissed the Potters' appeal, in part. The matter is now before us for a decision on four assignments of error the Potters present arising from orders of the trial court that are final and appealable. For that purpose, the Potters are the appellants and the Defendants are appellees.
FIRST ASSIGNMENT OF ERROR
 {¶ 15} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES ON APPELLANTS CLAIMS FOR UNLAWFUL RETALIATION AND DISCHARGE IN VIOLATION OF STATUTE AND PUBLIC POLICY."
 {¶ 16} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact *Page 6 
exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First NationalBank Trust Co. (1970), 21 Ohio St.2d 25.
 {¶ 17} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. OfEdn. (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal Co., 64 Ohio St.2d 116, 119-120, 1992-Ohio-106. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 18} The trial court granted summary judgment on the Potters' claim for relief alleging unlawful retaliation and discharge, finding that the authority in law on which the claims are founded do not apply to Daisy Potter's termination as a student by the RETS school. We agree.
 {¶ 19} Potter points to the testimony of Defendant Kenneth *Page 7 
Miller, campus director of the RETS school, that Potter was terminated because it "came to my attention that Daisy had filed a complaint with the Ohio Board of Nursing against the school." The subject of that complaint was Kowalski's conduct in assaulting Potter.
 {¶ 20} Potter relies on R.C. 4723.341, which establishes certain immunities of witnesses and professional associations, and provides, in pertinent part:
 {¶ 21} "(A) As used in this section, `person' has the same meaning as in section 1.59 of the Revised Code and also includes the board of nursing and its members and employees; health care facilities, associations, and societies; insurers; and individuals.
 {¶ 22} "(B) In the absence of fraud or bad faith, no person reporting to the board of nursing or testifying in an adjudication conducted under Chapter 119. of the Revised Code with regard to alleged incidents of negligence or malpractice or matters subject to this chapter or sections3123.41 to 3123.50 of the Revised Code and any applicable rules adopted under section 3123.63 of the Revised Code shall be subject to either of the following based on making the report or testifying:
 {¶ 23} "(1) Liability in damages in a civil action for *Page 8 
injury, death, or loss to person or property;
 {¶ 24} "(2) Discipline or dismissal by an employer.
 {¶ 25} "(C) An individual who is disciplined or dismissed in violation of division (B)(2) of this section has the same rights and duties accorded an employee under sections 4113.52 and 4113.53 of the Revised Code."
 {¶ 26} R.C. 1.59(C) states: "`Person' includes an individual, corporation, business trust, estate, trust, partnership, and association."
 {¶ 27} R.C. 3123.41 to 3123.50 and 3123.63 establish provisions for suspension of occupational licenses of child support obligors who are in arrears on their support obligations.
 {¶ 28} R.C. 4113.52 and 4113.53 each apply to "an employee (who) becomes aware in the course of employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation is either a criminal offense that is likely to cause imminent risk of physical harm to persons or a hazard to public health or safety or is a felony," and the employee reports the alleged violation first to his employer and, failing corrective action by the employer, thereafter to a *Page 9 
public authority.
 {¶ 29} Potter argues that she is entitled to the protection afforded by R.C. 4723.341(B)(2), which applies to "[d]iscipline or dismissal by an employer." Potter also relies on case law involving terminations of employees: Collins v. Rizkana (1995), 73 Ohio St.3d 65, 1995-Ohio-135;Fox v. City of Bowling Green (1996), 76 Ohio St.3d 534, 1996-Ohio-104.
 {¶ 30} The trial court found that R.C. 4723.341(B)(2) does not apply to Potter's termination as a student because the protections that section affords is limited to persons who enjoy the status of an employee. We agree. The prohibitions of the section are constraints on the conduct of "an employer." The term employer refers to one of two parties to an employment relationship. The other is an employee, who is a person who works in the service of another, the employer, under an express or implied contract of hire.
 {¶ 31} Daisy Potter trained as a student under the direction of instructors employed by the RETS school, but Daisy Potter's relationship with the RETS school was not a contract of hire. Instead, it was a contract for training and instruction. The rights and benefits conferred by R.C. 4723.341.(B)(2) do not apply to discipline or dismissal of *Page 10 
persons who are students by persons or entities providing a course of training or instruction. Furthermore, neither do the subject matter of the reports to which R.C. 4723.341(B) refers, negligence or malpractice or the statutory matters identified, encompass reporting an assault to the Ohio Board of Nursing, its criminal character notwithstanding, especially when no prior report was made to "an employer" pursuant to R.C. 4113.52 or 4113.53.
 {¶ 32} Potter further argues that her termination was contrary to public policy because it was in retaliation for her call to the police reporting Kowalski's criminal conduct. The contention is wholly conclusory. Potter points to no evidence to support that conclusion. Indeed, it is inconsistent with Potter's contention that the cause of her termination was the complaint she made to the Ohio Board of Nursing. Evidence that the RETS school acted in retaliation as Potter alleges may be proof of Potter's claim for breach of contract against the RETS school. That claim survives the partial summary judgments the trial court granted.
 {¶ 33} The first assignment of error is overruled
SECOND ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO THE APPELLEES ON APPELLANTS CLAIMS FOR INTENTIONAL AND *Page 11 
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS."
 {¶ 35} The Potters alleged that Daisy Potter has suffered severe emotional distress as a proximate result of Kowalski's assault and Potter's termination as a student by the RETS school.
 {¶ 36} In order to be actionable on a claim of intentional infliction of emotional distress, an actor's conduct must be extreme and outrageous. Hanley v. Riverside Methodist Hospital (1991),78 Ohio App.3d 73. To satisfy that standard, the acts concerned must by their nature go beyond all possible bounds of decency so as to be considered utterly intolerable in a civilized community. Pyle v. Pyle (1983),11 Ohio App.3d 31. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Yeager v. LocalUnion 20 (1983), 6 Ohio St.3d 369, 375.
 {¶ 37} The trial court found that reasonable minds could only conclude that the conduct on which Potter's claim for intentional infliction of emotional distress is predicated, Kowalski's assault and Potter's termination, do not rise to the level of outrageous conduct defined byHanley, Pyle, and Yeager. We agree. *Page 12 
 {¶ 38} The trial court also granted summary judgment against the Potters on their claim for negligent infliction of emotional distress, reasoning that Kowalski's assault and Potter's termination by the RETS school were intentional acts on the part of those defendants, not negligence.
 {¶ 39} The availability of a claim for relief for negligent infliction of emotional distress was first recognized in Ohio in Paugh v.Hanks (1983), 6 Ohio St.3d 72. In that case, serious emotional distress was allegedly suffered by a parent who feared her children were in peril when automobiles accidentally left the road and collided into her home. The issue was whether the emotional distress the parent allegedly suffered was reasonably foreseeable to the drivers, when the parent suffered no physical harm.
 {¶ 40} Cases in which claims for relief for negligent infliction of emotional distress have been held to lie have, like Paugh v. Hanks, involved distress suffered by a bystander who witnessed a sudden and shocking event, such as an auto accident, that did or reasonably could result in injury to other persons. We have held that one who witnesses the negligent damaging of his property over a period of time arising out of the ongoing negligence of the defendant may not recover for emotional distress experienced as a result. *Page 13 
Reeser v. Weaver Brothers (1989), 54 Ohio App.3d 46. Further, when the distress which is suffered is a part of the harm directly and proximately resulting from underlying event, a separate claim for relief for the distress allegedly suffered will not lie.
 {¶ 41} Any distress Potter may have suffered as a proximate result of Kowalski's assault is compensable on Potter's separate claim for relief for assault. With respect to her termination by the RETS school, the injury suffered was to Potter's property rights, for which the Potters have a claim for breach of contract, and the termination itself arose out of events that occurred over a period of time. Therefore, a claim for negligent infliction of emotional distress does not lie on account of Daisy Potter's termination as a student by the RETS school.Reeser v. Weaver Brothers.
 {¶ 42} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 43} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO THE APPELLEES ON APPELLANTS CLAIMS FOR DEFAMATION."
 {¶ 44} The Potters' defamation claim is based on the alleged HIPPA violation of which Potter was accused by officials of the RETS school. In order for a defamation claim to lie, there must be proof that a false statement was *Page 14 
published to a third party. Celebrezze v. Dayton Newspapers, Inc.
(1988), 41 Ohio App.3d 343. Potter argues that publication occurred when the "statement (concerning the HIPPA violation) was published both verbally and in writing on a Notice of Probation form that was part of Appellant's school file." (Brief, pp. 12-13). However, that is not publication to a third party. Potter's apprehension that prospective employers may learn of the alleged HIPPA violation anticipates a publication that has not occurred.
 {¶ 45} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 46} "THE TRIAL COURT ERRED BY GRANTING THE APPELLEES MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES FOR APPELLANTS CLAIMS FOR RETALIATION, WRONGFUL DISCHARGE, INTENTIONAL / NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND DEFAMATION."
 {¶ 47} We have held that Potter's claims for relief on these causes do not lie. Therefore, punitive damages are unavailable for them.
 {¶ 48} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. and GLASSER, J., concur. *Page 1