[Cite as *Missionaries of the Sacred Heart, Inc. v. Ohio Dept. of Youth Servs.*, 2020-Ohio-5596.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Missionaries of the Sacred Heart, Inc. et al.,  :

       Plaintiffs-Appellants,  :

                            No. 19AP-872

v.  :        (Ct. of Cl. No. 2019-00835JD)

Ohio Department of Youth Services,  :      (REGULAR CALENDAR)

       Defendant-Appellee.  :

---

D E C I S I O N

Rendered on December 8, 2020

---

**On brief:** *Haynes Kessler Myers & Postalakis, Inc.*, and *Eric B. Hershberger*, for appellants.

**On brief:** *Dave Yost*, Attorney General, and *Christopher P. Conomy*, for appellee.

---

APPEAL from the Court of Claims of Ohio

SADLER, P.J.

{¶ 1} Plaintiffs-appellants, Missionaries of the Sacred Heart, Inc., Sister Michael Marie, and Sister Mary Cabrini, appeal from a judgment of the Court of Claims of Ohio dismissing their complaint against defendant-appellee, Ohio Department of Youth Services ("DYS"), for failure to state a claim on which relief can be granted and lack of subject-matter jurisdiction. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 26, 2019, appellants filed a complaint against DYS in the Court of Claims seeking declaratory and injunctive relief as well as monetary damages. Appellants' complaint identified several legal theories including defamation, false light invasion of privacy, and retaliation.

{¶ 3} According to the complaint, appellant Missionaries of the Sacred Heart, Inc. ("Mission") is a "Kentucky non-profit, religious corporation licensed to transact business in

Ohio." (Compl. at ¶ 1.) Appellants Sister Michael Marie and Sister Mary Cabrini ("the Sisters") are agents and officers of the Mission and Traditional Catholic nuns. (Compl. at ¶ 2.) The Sisters "receive voluntary contributions to defray the expense of their daily basic needs and to fund further missions and works of charity throughout Ohio and the world." (Compl. at ¶ 4.) A "significant portion of [the Sisters'] mission is with [DYS], particularly including DYS's location in Circleville, Ohio (hereafter "CJCF")." (Compl. at ¶ 7.)

{¶ 4} At all times relevant to the complaint, DYS employee Curtis Kemp held the position as Probationary Chaplain at CJCF. Shari Wolf was the Deputy of Programs at CJCF and Kemp's supervisor. Donald Bean served as Administrator of the Office of Community Partnerships and Wolf's immediate supervisor. Wendi Faulkner, who was Bean's supervisor, served as Deputy Director, Central Office, Division of Facility Support.

{¶ 5} The complaint alleges that "[d]uring the months leading up to June, 2018 and continuing through July 2018, [the Sisters] experienced disturbing and elevating instances of Kemp's behavior at CJCF, including (but not limited to): A) Kemp's discriminatory assertion that the Sisters were 'not real nuns,' B) Kemp's careless failure to abide by known security protocols when emailing unredacted names of youth housed at CJCF: C) Kemp's failure to timely and completely communicate with [the Sisters] on multiple occasions about the scheduling and coordination of various, important aspects of highly beneficial volunteer program activities put on by [the Sisters] as volunteers to the youth housed at CJCF; and, D) Kemp's bizarre, undignified and ungrateful attitude toward a Green Beret and Special Forces General who visited CJCF for his (partial) presentation in [the Mission's] volunteer CERT program." (Compl. at ¶ 11.)

{¶ 6} When the Sisters' efforts to raise their concerns with Kemp proved unavailing, the Sisters sought help from Wolf, but she informed them she intended to "stand by her Chaplin." (Compl. at ¶ 13.) The Sisters then contacted Bean at the DYS central office on July 23, 2018 and left him both a voicemail message and an email correspondence expressing their concerns about Kemp. When the Sisters "received no response" from Bean, they sent an email correspondence to his supervisor, Faulkner, on the morning of July 27, 2018. (Compl. at ¶ 14.) Faulkner acknowledged receipt of the Sisters' email correspondence later that morning and informed them that "another DYS official would be in contact soon." (Compl. at ¶ 16.)

{¶ 7} On the afternoon of July 27, 2018, Bean copied the Sisters on an email correspondence containing a draft letter purporting to suspend the Sisters' volunteer privileges with DYS.[1] The official suspension letter was mailed to the Sisters on July 30, 2018. The suspension letter, attached to the complaint as Exhibit A, charges that the Sisters have "breached [the] confidentiality of youth information[,] * * * will not follow security direction of staff [and] have incited youth by action [in] violation of Policy 171-VOL-03 Volunteer Orientation and Training and a violation of Policy 171-VOL-01 Volunteer Program Coordination." (Ex. A, attached to Compl.)

{¶ 8} In their complaint, appellants allege that "the factual basis for the statements in the suspension letter were manufactured by [DYS] to create a false factual evidence trail, knowing that the statements were false. * * * Some of the supposed factual support for the reasons for the suspension letter was created hours before its issuance, and some of the 'support' was created *after* the issuance of the suspension letter — in some cases, months later." (Emphasis sic.) (Compl. at ¶ 19.) Appellants sought an order from the Court of Claims declaring the statements in the suspension letter false and defamatory and an order compelling DYS to retract the suspension letter, remove the suspension letter from the public record, and reinstate the Sisters' volunteer privileges.

{¶ 9} The Court of Claims ruled that appellants' complaint failed to state a claim for defamation because appellants did not allege facts which would support a finding that DYS published the suspension letter to any third party. The Court of Clams dismissed the false light invasion of privacy claim for similar reasons on concluding the complaint failed to allege facts that would support a finding that DYS publicized the suspension letter. The Court of Claims determined that it did not have jurisdiction to hear and determine appellants' retaliation claim or to issue either a declaratory judgment or an injunction.

{¶ 10} Appellants timely appealed to this court from the judgment of the Court of Claims.

## II. ASSIGNMENT OF ERROR

{¶ 11} Appellants assign the following as trial court error:

> THE TRIAL COURT ERRED BY DISMISSING THE
> DEFAMATION CLAIM BELOW FOR FAILING TO STATE A
> CLAIM UPON WHICH RELIEF CAN BE GRANTED AND

---

[1] Appellants maintain that Bean mistakenly copied the Sisters on the draft suspension letter.

APPELLANTS' CLAIM FOR INJUNCTIVE RELIEF FOR
WANT OF SUBJECT MATTER JURISDICTION.

## III.  STANDARD OF REVIEW

{¶ 12} "An appellate court reviews a trial court's dismissal pursuant to Civ.R. 12(B)(6) de novo." *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-550, 2017-Ohio-5531, ¶ 10, citing *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, ¶ 12, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.  "A motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted tests the sufficiency of the complaint." *Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-270, 2019-Ohio-4871, ¶ 5, citing *Dunlop* at ¶ 10, citing *Volbers-Klarich v. Middletown Mgt.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. "[I]n reviewing a Civ.R. 12(B)(6) dismissal, an appellate court looks to the complaint, presumes that the complaint's factual allegations are true, and makes all reasonable inferences in the nonmoving party's favor." *Dunlop* at ¶ 10, citing *Ohio Civ. Serv. Emps. Assn.* at ¶ 12, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  "In so doing, 'we need not accept as true unsupported conclusions in a complaint.' " *Evans* at ¶ 5, citing *Dunlop* at ¶ 10, citing *Ohio Civ. Serv. Emps. Assn.* at ¶ 21, citing *Mitchell* at 193. "An appellate court may affirm a judgment granting a Civ.R. 12(B)(6) motion to dismiss only when there is no set of facts set forth in the complaint on which the nonmoving party could recover." *Evans* at ¶ 5, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

{¶ 13} The standard of review for a dismissal pursuant to Civ. R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67 (10th Dist.1987), citing *Steffen v. General Tel. Co.*, 60 Ohio App.2d 144 (12th Dist.1978).  " 'Appellate courts review de novo the issue of subject-matter jurisdiction without any deference to the trial court's determination.' " *Vance v. State*, 10th Dist. No. 18AP-484, 2019-Ohio-1322, ¶ 13, quoting *TLC Health Care Servs., LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 17AP-181, 2017-Ohio-9198, ¶ 8, citing *Cheap Escape Co., Inc. v. Tri-State Constr., LLC*, 173 Ohio App.3d 683, 2007-Ohio-6185, ¶ 18 (10th Dist.).

## IV. LEGAL ANALYSIS

### A. Appellants' Assignment of Error

{¶ 14} In appellants' sole assignment of error, appellants contend the trial court erred when it dismissed their defamation claim pursuant to Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted and for dismissing their prayer for injunctive relief pursuant to Civ.R. 12(B)(1) for lack of subject-matter jurisdiction.[2] We disagree.

#### 1. Defamation

{¶ 15} " 'In Ohio, defamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." ' " *Dehlendorf v. Gahanna*, 10th Dist. No. 14AP-379, 2015-Ohio-3680, ¶ 36, quoting *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B—Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995). " 'Generally speaking, defamation can come in two forms: slander, which is spoken; and libel, which is written.' " *Dehlendorf* at ¶ 36, quoting *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 46. " 'To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.' " *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 77, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist.1996). "The third element—the publication of a false and defamatory statement—'is an essential element to liability for defamation.' " *Jabr v. Ohio Dept. of Taxation*, 10th Dist. No. 16AP-26, 2016-Ohio-4776, ¶ 8, quoting *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993). "Publication occurs when a defendant communicates a false and defamatory statement to a person or persons other than the person defamed."

---

[2] Appellants' assignment of error does not challenge the dismissal of the retaliation claim or the claim of false light invasion of privacy. Accordingly, those claims have been abandoned for purposes of appeal. *Grieser v. Janis*, 10th Dist. No. 17AP-3, 2017-Ohio-8896, ¶ 16; *State v. Jackson*, 10th Dist. No. 18AP-758, 2019-Ohio-4995, fn. 3; *Ohio Assn. of Public School Emps. (OAPSE) v. School Emps. Retirement Sys.*, 10th Dist. No. 19AP-288, 2020-Ohio-3005, fn. 3.

*Jabr* at ¶ 8, citing *Hecht* at 460, citing 3 Restatement of the Law 2d, Torts, Section 577(1) (1965).

{¶ 16} The Court of Claims ruled that appellants' complaint failed to state a claim for defamation because appellants did not allege facts to support a finding that the suspension letter was communicated to a third party.  In other words, the Court of Claims determined that even if the operative facts alleged in the complaint were accepted as true, appellants' defamation claim failed, as a matter of law, due to the absence of any allegation of fact as to the critical element publication.  We agree with the Court of Claims.

{¶ 17} Appellants' complaint sets forth the following relevant facts:

> [E]vidence demonstrating the falsity of the statements was never investigated, as [appellants] discovered on or about December 19, 2018 when DYS officials processed as a public records request [appellants'] request for the investigative results into their July 27, 2018 complaints about retaliation, thereby confirming that the false statements in the draft of the July 27, 2018 suspension letter (as well as those in its ultimate issuance on or about July 30, 2018) were published to the public at large and available for dissemination to anybody upon request.

(Compl. at ¶ 19.)

{¶ 18} Appellants' complaint does not allege DYS provided a copy of the suspension letter to any person other than the Sisters themselves.  Rather, appellants contend DYS published the suspension letter to a third party by retaining the letter as a public record available to anyone seeking it under the public records law.  We disagree.

{¶ 19} 3 Restatement of the Law 2d, Torts, Section 577(1) addressing "what constitutes publication" provides in relevant part that "[p]ublication of defamatory matter is its communication intentionally or by a negligent act *to one other than the person defamed*."  (Emphasis added.)  *Jabr* at ¶ 8, citing *Hecht* at 460.  The Comments Section of 577(1) provides in part as follows:

> *a. Manner of making publication*. A *publication of the defamatory matter is essential to liability*. * * * Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication. * * *
>
> *b. Communication to third person*. To constitute a publication it is necessary that the defamatory matter be communicated to some one other than the person defamed.

> *The law of defamation primarily protects only the interest in reputation. Therefore, unless the defamatory matter is communicated to a third person there has been no loss of reputation, since reputation is the estimation in which one's character is held by his neighbors or associates.* * * * It is not necessary that the defamatory matter be communicated to a large or even a substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed.

(Emphasis sic and added.)

{¶ 20} Because there is no allegation in the complaint that DYS communicated the defamatory material in the suspension letter to anyone other than the Sisters themselves, it is impermissible to infer that appellants have suffered loss of reputation as would support an actionable defamation claim. It follows then that the alleged defamatory statements contained therein remain a private matter between appellants and DYS and are not actionable defamation.

{¶ 21} In 2019, the Northern District of Ohio addressed the publication issue in a defamation case under remarkably similar facts to those set forth in appellants' complaint. In *Sheridan v. Columbia Local School Dist. Bd. of Edn.*, N.D.Ohio No. 1:18 CV 1162 (May 24, 2019),[3] a high school teacher sued the local school board alleging various forms of tortious conduct, including defamation. The complaint alleged that the board superintendent issued Sheridan a letter of reprimand falsely accusing him of telling a student's parents that another employee lied about the student's medical condition. The complaint sought monetary damages and injunctive relief in the form of an order compelling the board to remove the allegedly defamatory materials from his public employment record.[4]

{¶ 22} In granting the board's motion for summary judgment on the defamation claim, the court determined that Sheridan failed to produce any evidence to support a finding that the board published the letter of reprimand to a third party. Applying Ohio law, the Northern District of Ohio found as follows:

> Publication of a false statement is an essential element of a defamation claim. There is absolutely no evidence that the

---

[3] *Aff'd*, 795 Fed.Appx. 966 (6th Cir.2020).
[4] The Northern District indicated the reprimand letter was removed from Sheridan's personnel file and all other files at the board after he filed his complaint.

> April 11 letter was ever published prior to its removal from Mr. Sheridan's file. Plaintiff argues that because his personnel file is a government record that could be the subject of a Freedom of Information Act Request or the Ohio's Public Records Law, R.C. 149.43, placement of the letter within the file was sufficient to constitute publication. Ohio Courts have rejected this argument. *Placement of a statement in someone's file, even if that file may be considered a public record, does not equate to publication for purposes of defamation if no third-party accesses the information. See, Potter v. Rets Tech Center Co., Inc.*, 2008-Ohio-993, 2008 WL 615423 (2nd Dist. 2008) (apprehension that someone may see information within an individual's public file "anticipates a publication that has not yet occurred"). As there is no evidence that the April 11, 2018 letter was ever viewed by a third-party, and it has since been removed from Mr. Sheridan's files and all other files of the Board of Education, Mr. Sheridan has no viable present or future claim for defamation based on this letter.

(Emphasis added.) *Id.*

{¶ 23} *Potter v. RETS Tech Ctr. Co., Inc.*, 2d Dist. No. 22012, 2008-Ohio-993, the case relied on by the Northern District in *Sheridan*, involved a defamation action initiated by a nursing student who was terminated from the school after she reported to the Ohio Board of Nursing that a school employee assaulted her. In granting summary judgment to the school, the court rejected the student's contention that the board published the defamatory matter when it placed a "Notice of Probation" in her school file. *Id.* at ¶ 44. The court stated that the school's conduct in placing the notice of probation in her file was "not publication to a third party." *Id.* Aprehension that someone may see information within an individual's public file "anticipates a publication that has not yet occurred." *Id.*

{¶ 24} We agree with the reasoning expressed in *Potter* and *Sheridan*, and we reject appellants' contention that publication of the suspension letter occurred when DYS made the suspension letter part of the public record. The fact that DYS provided a copy of the suspension letter to the Sisters in response to a public records request is insufficient, as a matter of law, to support the required element of publication for purposes of a claim for defamation.

{¶ 25} Appellants' argument to the contrary is grounded on the decision of this court in *Mehta v. Ohio Univ.*, 194 Ohio App.3d 844, 2011-Ohio-3484, ¶ 27 (10th Dist.). Appellants claim that *Mehta* stands for the proposition that a public agency has published

defamatory statements to a third party when the agency retains the document containing the defamatory statements as a public record. We disagree.

{¶ 26} In *Mehta*, a university professor, Mehta, filed a defamation action against the university after the university provost circulated a report to the media indicating that certain faculty members, including Mehta, failed to monitor the writing of Ph.D. candidates' theses and basically supported academic fraud. The provost maintained that she felt compelled to release the report to the press because of an outstanding public records request. The evidence also showed that a university dean told a local newspaper reporter that Mehta's contract had not been renewed, in part, due to his conduct in connection with the plagiarism scandal at the university. The Court of Claims granted summary judgment in favor of the university on finding the allegedly defamatory statements contained in the report were constitutionally protected opinion. The Court of Claims held, alternatively, even if the published report contained defamatory statements of fact, the university was shielded from liability because the report was published pursuant to a public records request.

{¶ 27} The primary issue for this court was whether the alleged defamatory statements in the report were constitutionally protected opinion or actionable statements of fact. This court held that both the statements in the report and those made by the dean were actionable assertions of fact. *Id.* at ¶ 46, 49. With regard to the Court of Claims' alternative holding, this court engaged in the following analysis:

> By way of appellant's second assignment of error, [Mehta] challenges the trial court's finding that OU's publication of the report was not actionable as a matter of law because it was disseminated in response to a public records request.[5] * * *
>
> * * *
>
> [T]he trial court began its analysis by noting that the dissemination occurred in response to a pending public records request. It then cited authority indicating that an investigatory report of a public employee is a public record. As a result, it then held that the "publication was not actionable, as a matter of law." (Trial court decision, at 12.)

---

[5] Mehta's second assignment of error alleged: "The trial court erred as a matter of law in holding that defamatory statements contained in public records are not actionable even when they are written for public consumption and then voluntarily disseminated to the media by public officials." *Id.* at ¶ 23.

* * *

> Certainly, there are instances in which portions of public records are not subject to disclosure. *See State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 84, 2008 Ohio 1770, 886 N.E.2d 206 (Ohio Public Records Act "excepts from disclosure '[r]ecords the release of which is prohibited by state or federal law.' "); *see also United States v. Miami Univ.* (C.A.6, 2002), 294 F.3d 797, 811, citing R.C. 149.43(A)(1)(v) ("Ohio Public Records Act does not require disclosure of records the release of which is prohibited by federal law.")  Indeed, the Ohio Public Records Act allows for redactions for certain content and also sets definitional parameters regarding what constitutes a public record.  *See* R.C. 149.43.  *Upon conducting our own research, we concur with appellant's position that there is no legal authority in Ohio providing for blanket immunity from defamation for any and all content included within a public record. Moreover, appellee has failed to provide any reasons why we should create such authority based upon the circumstances of this matter.*  As a result, we sustain appellant's second assignment of error.

(Emphasis added.)  *Id.*, 2011-Ohio-3484, at ¶ 59-63.

**{¶ 28}** Appellants rely on the highlighted language of the *Mehta* decision as support for their contention that a publication of the suspension letter occurred when DYS made it part of the public record.  In our view, the *Mehta* case does not provide any insight into the publication issue, as there was no dispute in that case that the defamatory material was communicated to a third party.  When viewed in the proper light, the language in *Mehta* on which appellants rely is merely a recognition by this court that a privilege or immunity from liability for defamation may not arise when an agency releases defamatory material to a third party in response to a public records request.  *Mehta* does not support appellants' contention the suspension letter was published for purposes of their defamation claim when DYS retained it as a public record.[6]

---

[6] We express no opinion whether DYS's statutory duty to make certain records available to the public would shield DYS from liability for defamation should DYS subsequently publish the suspension letters to a third party in response to a public records request. *See* R.C. 149.43.  *See also* R.C. 2743.02(A)(3)(a) ("the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty").  Such a determination would arguably involve matters of privilege and/or immunity that are not before the court given the absence of facts supporting publication.

{¶ 29} Here, like the *Mehta* case, the alleged defamer is a public agency, DYS. Appellants' complaint alleges that a copy of the suspension letter was provided to them by DYS pursuant to a public records request. Thus, for purposes of Civ.R. 12(B)(6), the complaint establishes that the suspension letter is part of the public record retained by DYS pursuant to R.C. 149.01 et seq., and DYS may be required, under the public records law, to provide it to anyone seeking a copy. However, unlike *Mehta*, there are no facts to support a finding that the suspension letter has been communicated to anyone other than appellants, either in response to a public records request or otherwise. Nor do the allegations of the complaint permit the inference of any such communication. A possible future communication of the defamatory matter to a third party is not a publication for purposes of a defamation claim. *Potter* at ¶ 44; *Sheridan*, N.D.Ohio No. 1:18 CV 1162; 3 Restatement of the Law 2d, Torts, Section 577(1).

{¶ 30} Appellants nevertheless argue that they requested leave to amend their pleading in order to cure any pleading deficiency, but the Court of Claims refused to permit appellants to amend. We note that appellants made their request in their memorandum in opposition to DYS's motion to dismiss, not by motion. Moreover, appellants' request reads as follows: "If the Court is inclined to dismiss any aspect of Counts II and III of the Complaint based upon a pleading deficiency, [appellants] would respectfully request leave be given first to allow the pleading to be amended *to more fully explain the factual (and if needed the legal) dimensions of the retaliatory aspects of DYS's conduct.*" (Emphasis added.) (Sept. 12, 2019 Memo. Contra at 3.) It is evident from appellants' request that they sought leave to amend their complaint for the sole purpose of supplementing their retaliation claim, a claim which appellants have abandoned on appeal. Appellants never filed a proposed amended or supplemental pleading alleging facts which would support a publication of the suspension letter to any third party either prior to or after appellants filed the complaint.[7] Thus, any argument regarding leave to amend is unavailing.

---

[7] Civ.R. 15(E) provides in relevant part: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense."

### 2.. Injunctive Relief

{¶ 31} Appellants argue that even if we agree with the Court of Claims that appellants failed to allege facts which would support a publication for purposes of their defamation claim, the Court of Claims erred when it dismissed their prayer for injunctive relief for want of jurisdiction. We disagree.[8]

{¶ 32} R.C. 2743.03(A) creates the jurisdiction of the Court of Claims and provides two bases for jurisdiction of claims for injunctive and declaratory relief:

> (1) * * * The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code * * *. The court shall have full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims.
>
> (2) If the claimant in a civil action as described in division (A)(1) of this section also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that *arises out of the same circumstances that gave rise to the civil action* described in division (A)(1) of this section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action. * * *

(Emphasis added.)

{¶ 33} There is no question that appellants' equitable claims arise out of the same circumstances that gave rise to the tort claims for which appellants seek monetary relief. The Court of Claims determined, however, that it did not have jurisdiction of those claims following the dismissal of the claims for monetary damages pursuant to Civ.R. 12(B)(6). We agree.

{¶ 34} In *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, *discretionary appeal denied*, 134 Ohio St.3d 1419, 2013-Ohio-158, a frustrated bidder brought suit against a state university in the Court of Claims seeking declaratory and injunctive relief and monetary damages. The university filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(1) and (6). The Court of Claims determined that the bidder did not allege facts to support an actionable claim for breach of contract or

---

[8] Though appellants' assignment of error does not speak to their prayer for declaratory relief, we apply the same rule of law to all equitable claims asserted in the Court of Claims.

breach of a lease agreement and that the claim seeking bid-preparation costs also failed. Having determined that the bidder did not establish a claim for monetary damages over which it had jurisdiction, the Court of Claims concluded that it lacked subject-matter jurisdiction over the bidder's equitable claims for declaratory and injunctive relief. The frustrated bidder appealed to this court from the decision of the Court of Claims.

{¶ 35} In affirming the judgment of the Court of Claims, this court set forth the applicable rule of law as follows:

> Because the Court of Claims has jurisdiction to hear claims for declaratory and injunctive relief where there is also a claim for money damages arising out of the same circumstances giving rise to a civil action over which it otherwise has jurisdiction, and because the instant complaint alleges such causes of action, the complaint states causes of action cognizable in the forum *if it* properly sets forth a claim for money damages. However, if [appellant] can prove no set of facts entitling it to recover money damages, the complaint fails to state a claim upon which relief can be granted, and consequently, without a proper claim for damages, the Court of Claims lacks subject-matter jurisdiction to hear the other causes of action.

(Emphasis sic.) *Id.* at ¶ 11.

{¶ 36} Applying the above-cited rule of law, this court ruled that the Court of Claims did not err when it concluded the frustrated bidder failed to allege facts to support a claim for monetary damages over which the Court of Claims had jurisdiction. Accordingly, we agreed that the Court of Claims lacked subject-matter jurisdiction over the bidder's equitable claims for declaratory and injunctive relief. *Modern Office Methods* at ¶ 11-12, applying R.C. 2743.03(A)(2).

{¶ 37} Here, we have determined that the Court of Claims did not err when it dismissed appellants' defamation claim for failure to state a claim on which relief may be granted and that appellants have not challenged the dismissal of the false light invasion of privacy and retaliation claims in this appeal. Because the Court of Claims did not err when it dismissed appellants' claims for monetary damages, the Court of Claims lacked subject-matter jurisdiction of appellants' equitable claims for declaratory and injunctive relief. R.C. 2743.03(A)(2); *Modern Office Methods* at ¶ 11-12. *See also Cardi v. State*, 10th Dist. No. 12AP-15, 2012-Ohio-6157, ¶ 8, citing *Modern Office Methods* at ¶ 11-12. Accordingly, we

hold the Court of Claims did not err when it dismissed appellants' equitable claims for declaratory and injunctive relief for want of jurisdiction.

{¶ 38} For the foregoing reasons, appellants' assignment of error is overruled.

## V.  CONCLUSION

{¶ 39} Having overruled appellants' sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____