[Cite as *Wattley v. Rinaldi*, 2025-Ohio-5538.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARCUS WATTLEY, ET AL<br><br>Plaintiffs - Appellants<br><br>-vs-<br><br><br><br>JOHN RINALDI, ET AL<br><br>Defendants – Appellees | Case No. 2025CA00034<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Stark County Court of Common Pleas, Case No. 2023 CV 00931<br><br>Judgment:   Affirmed<br><br>Date of Judgment Entry:December 11, 2025 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J., ROBERT G. MONTGOMERY, J., KEVIN W. POPHAM, J, Appellate Judges

**APPEARANCES:** Peter Pattakos, for Plaintiffs-Appellants; Kathryn Perrico, For Defendants-Appellees

OPINION

*Popham, J.*

{¶1}   Appellants appeal the judgment entries of the Stark County Court of Common Pleas dated October 30, 2023, granting a Motion to Dismiss filed by Appellees John Rinaldi and Jeffrey Talbert, and November 16, 2023, striking portions of Appellants' First Amended Complaint.  For the reasons below, we affirm the trial court.

*Facts & Procedural History*

{¶2}   Appellants in this case are Marcus Wattley ("Wattley"), Frank McLeod, Zachary Sweat, Romero Harris, Cade Brodie, and Tyler Thatcher.  Appellees are Jeffrey

Talbert, Superintendent of the Canton City School District ("District"), and John Rinaldi, President of the Canton City School District Board of Education ("Board").

{¶3} This case revolves around an incident in May of 2021 at a Canton McKinley High School football team practice, and the actions of various parties after the incident. Pursuant to the complaint, student K.W. was "disciplined" by the coaching staff for poor behavior, such as showing up for practices under the influence of marijuana, disrespecting coaches and other players, having a negative attitude, and failing to appear for scheduled workouts without notifying his coach. On Monday, May 24, 2021, K.W. allegedly appeared for practice seemingly under the influence of marijuana. At that point, Wattley sat K.W. down in front of his teammates and gave him a pepperoni pizza to eat while his teammates worked out around him.

{¶4} According to some reports, Wattley allegedly forced K.W. to eat the pizza even after K.W. told Wattley he did not eat pork for religious reasons. Wattley avers he offered to get K.W. chicken nuggets instead, but K.W. stated he would just eat the pizza. The coaching staff sought to make K.W. feel the discomfort of being the only player in the room resting and eating while the rest of his teammates were hungry and working hard, in the hopes that this would motivate K.W. to improve his attitude and work ethic.

{¶5} Josh Grimsley, a member of the coaching staff, allegedly reported the incident to K.W.'s father, Kenny Walker ("Walker"), and to Steve Humphrey, the Safety and Security Director at the high school. This report triggered an investigation by the District.

{¶6} The District immediately suspended the coaching staff pending a District investigation into the incident. Following further investigation, all of the coaches were

terminated from their positions. At a meeting on June 3, 2021, the Board approved the coaching position terminations. On June 24, 2021, the Board approved additional resolutions terminating Wattley, Sweat, and McLeod from their administrative positions.

{¶7} On May 24, 2023, six of the terminated coaches (Wattley, Sweat, McLeod, Harris, Brodie, and Thatcher) filed the instant case with the Stark County Court of Common Pleas[1]. The complaint asserts four causes of action against Appellees: defamation, false light invasion of privacy, civil conspiracy, and spoliation of evidence. Appellants contend the following statements made by Appellees are defamatory: (1) a public statement released by Talbert on the District's Facebook page on May 28, 2021; (2) a public statement released by Talbert on the District's Facebook page on June 2, 2021; (3) a draft resolution prepared by Talbert and presented at a Board meeting on June 3, 2021; (4) a statement by Rinaldi at the June 3, 2021, Board meeting; (5) a videotaped statement issued by Talbert on June 9, 2021; and (6) the Board's resolutions of June 24, 2021, which approved the termination of Wattley, McLeod, and Sweat.

**May 28, 2021, Statement**

{¶8} The May 28, 2021, Facebook post, allegedly made by Talbert on the Facebook page of the District, states as follows:

At the Canton City Schools, the safety and wellbeing of our students is our

top priority.

---

[1] On July 12, 2021, Appellants filed a complaint in the Stark County Court of Common Pleas, Case No. 2021CV00982, captioned as *Marcus Wattley, et al. v. John Rinaldi, et al.,* with allegations arising from the May 2021 incident. On January 18, 2023, Appellants filed a Notice of Voluntary Dismissal. On May 24, 2023, Appellants filed the instant case including prior defamation, and false light allegations and including new counts for civil conspiracy and spoliation.

An incident occurred during a football training session that was concerning enough to warrant immediate action by the Canton City School District. That immediate action was the suspension of eight members of the High School Football Coaching Staff, including the head coach, while an investigation is conducted.

This incident calls into question whether appropriate team management, discipline, and player accountability infrastructures are in place.

The District is nearing completion of its investigation regarding this incident. Once a conclusion is reached, in accordance with our commitment to transparency, the District will provide additional information.

The football program, which has a long and impressive history, is an important part of our school culture and our community. That program has a proud tradition of instilling the attributes of excellence, leadership, community, accountability, hard work, and respect into the players and those associated with the overall program. As such, those entrusted with the protection of our student-athletes must be held to a higher standard within our community.

Let us be clear, the Canton City School District holds all staff to the highest professional and ethical standards. Anything short of these standards is unacceptable.

As educators, we are united in the pursuit of creating an inclusive and safe learning environment for our students in the classroom and beyond.

**June 2, 2021, Statement**

{¶9}    The June 2, 2021, statement, allegedly made by Talbert, again appeared on the District's Facebook page.  It provides as follows:

I'd like to thank the community for their patience as the District investigated allegations of misconduct by members of our coaching staff.

An incident occurred during a football training session on May 24th that was concerning enough to warrant the immediate action of suspending eight members of the High School Coaching Staff, including the head coach, while an investigation was conducted.  Also, in an effort to be comprehensive, and with our student's health and wellbeing in mind, a police report was filed by the district.

That initial investigation has been concluded.

The investigation found that the identified coaches engaged in actions that constituted inappropriate, demeaning, and divisive behavior in a misguided attempt to instill discipline in the student athletes.  This behavior will not be tolerated and further disciplinary measures for staff, which have not yet been determined, will follow.  The District will continue to follow Board Policies and protocols regarding personnel issues.  Once disciplinary measures are determined, in accordance with our commitment to transparency, we will release additional information.

The football program, which has a long and proud history, is an important part of our school culture and school community.  This incident does not

reflect the Canton City School District culture of protecting the physical and emotional wellbeing of our students.

Let us be clear, the Canton City School District holds our coaching and general staff to the highest professional and ethical standards. Anything short of these standards is unacceptable and will not be tolerated.

Again, at the Canton City School District, the safety and well-being of our students is our top priority.

The Canton City School District Board of Education has scheduled a special meeting for Thursday, June 3, 2021, at 3:30 p.m. Potential action may follow an executive session.

**June 3, 2021, Draft Resolution**

{¶10} Appellants do not include the entirety of either the draft resolution or the official resolutions in their complaint, nor are they attached to the complaint. The complaint avers the following language is contained in the draft resolution allegedly prepared by Talbert: the District's investigation revealed that Wattley "harassed [K.W.] as a means of punishment," Wattley used "derogatory, disparaging, discriminatory, and insulting comments and conduct toward [K.W.]," Wattley and his staff, "inappropriately disciplined K.W., including by verbally berating and taunting him for having missed a prior optional conditioning session, and continuously forcing him to eat pizza," the Board policy is that "the Board of Education does not discriminate on the basis of religion, in its educational programs or activities," and Wattley violated that Board Policy.

{¶11} The complaint additionally asserts the following language is contained in the resolution that Rinaldi and other members of the Board unanimously voted to adopt

on June 24, 2021: "the coaches violated Board Rule 2260 which states, 'the Board of Education does not discriminate on the basis of religion,'" "the coaches harassed the student as a means of punishment," and "the coaches used derogatory, disparaging, discriminatory, and insulting comments and conduct toward the student."

**June 3, 2021, Rinaldi Statement**

{¶12} Appellants do not include the entirety of the allegedly defamatory statement by Rinaldi in their complaint. They allege Rinaldi stated the following at the June 3, 2021, Board meeting: that the decision to terminate appellants was supported by the District's official investigation of the incident, the District's investigation "found that the identified coaches engaged in actions that constituted inappropriate, demeaning, and divisive behavior" and the District "filed a police report as a result of the investigation."[2]

**June 9, 2021, Videotape Statement**

{¶13} Talbert issued a videotaped statement on June 9, 2021. Again, the entirety of the statement does not appear in Appellants' complaint, as the beginning of the statement is not included verbatim. Appellants allege as follows: Talbert "portrayed" the District's investigation as "extensive, comprehensive, objective, and conclusive," Talbert stated the video was "to set the record straight on how these events truly transpired," Talbert stated the District "spoke with a number of student athletes during the investigation," and Talbert stated that counsel for appellants "purposely provided false and inaccurate information to news sources." Appellants further aver that, during the video statement, Talbert stated the following:

---

[2] Repeatedly throughout their complaint and briefing, Appellants contend the District filed a police report for "hazing." However, none of the statements cited by Appellants as defamatory include either the word "hazing" or the Revised Code section for "hazing."

On May 24, troubling actions of our former football coaching staff came to the attention of our district administrative team.

On May 25, an investigation into these troubling allegations began. To provide student safety, coaches were placed on suspension, and barred from returning to campus, while the investigation occurred.

As part of the investigation, the district spoke with the involved coaches who are on our staff. As part of the investigation, the district requested permission to speak with student athletes present during the incident. The district spoke with a number of student athletes who were given permission to speak.

As part of the investigation, the district viewed security footage of the incident. This video footage is extensive and clearly shows the identified coaches engaging in actions that constituted inappropriate, demeaning, and divisive behavior in a misguided attempt to instill discipline in our student athletes.

The investigation satisfied the reporting requirements established by the State of Ohio including the submission of appropriate materials to the Ohio Department of Education's Office of Professional Conduct for their review. Also, in an effort to be comprehensive, and with our students' well-being in mind, a police report was filed by the district.

With the students' safety as our primary objective, the investigation was proper, timely, and appropriate, meeting the requirements established by the State of Ohio.

The investigation established that the behavior of the then-coaching staff constituted inappropriate, demeaning, and divisive behavior and it was unbecoming of the teaching profession. Their actions demonstrated extraordinarily poor judgment.

This investigation substantiated that, based upon their extraordinarily inappropriate actions, the seven members of the coaching staff, including the head coach, could no longer be coaches with the Canton City School District.

Let us be clear, the Canton City School District holds our coaching and general staff to the highest professional and ethical standards. Anything short of these standards is unacceptable and will not be tolerated.

{¶14} On July 21, 2023, Appellees filed a motion to dismiss Appellants' complaint[3]. Appellees argued, among other things, the complaint was filed past the applicable statute of limitations. On August 25, 2023, Appellants filed a brief in opposition, in which Appellants argued their complaint was timely filed in accordance with Ohio's Savings Statute, R.C. 2305.19. In support of the savings statute argument, Appellants posited the trial court "can take judicial notice of its own docket" – referring to Stark County Court of Common Pleas Case No. 2021CV00982. On September 1, 2023, Appellees filed a reply in support of their motion to dismiss.

{¶15} On October 30, 2023, the trial court granted Appellees' motion to dismiss. The trial court found as follows: the re-filed complaint is barred by the applicable statute of limitations; Appellees are immune to Appellants' complaint pursuant to R.C. 2744.02;

---

[3] Defendants Josh Grimsley, Edward Gilbert, Kenny Walker, K.W., and Stephen Humphrey were not included in the July 21, 2023, motion to dismiss.

both of the resolutions and Rinaldi's statement are protected by absolute privilege; and the balance of the statements made by Talbert were not false statements of fact and/or were constitutionally protected opinion.

{¶16} On November 7, 2023, which was 8 days after the trial court entered its judgment entry dismissing Appellees, Appellants filed a motion for leave to file a first amended complaint, including claims against Talbert and Rinaldi. Appellants asserted they sought to file an amended complaint to "add factual detail demonstrating the applicability of R.C. 2305.19(A)." Appellants further stated, "plaintiffs understand that in the event the court grants leave to file the amended complaint, Rinaldi and Talbert will remain dismissed." On November 13, 2023, the trial court denied, in part, and granted, in part, Appellants' motion to for leave to file an amended complaint. The trial court found that to allow Appellants to amend their complaint regarding Appellees constituted undue delay and would be prejudicial. Thus, the court denied the motion with regard to Appellees. However, the trial court found no undue delay or prejudice would result and, thus, granted Appellants leave to amend with regard to the remaining defendants.

{¶17} On November 15, 2023, Appellants filed their amended complaint, which included claims against Appellees. On November 16, 2023, the trial court issued a judgment entry striking the portions of the amended complaint concerning Appellees. The trial court held that, because Appellants included in their amended complaint allegations against Appellees, those portions of the amended complaint were filed without leave of court and were in the direct violation of the trial court's previous order.

{¶18} The judgment entries at issue in this appeal became final and appealable orders when the last defendant in the case was dismissed on March 7, 2025.

{¶19} Appellants appeal the judgment entries of the Stark County Court of Common Pleas, and assign the following as error:

{¶20} "I. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS' CLAIMS AGAINST DEFENDANTS TALBERT AND RINALDI UNDER CIV.R. 12(B)(6)."

{¶21} "II. THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT WITH RESPECT TO DEFENDANTS TALBERT AND RINALDI AND THEREAFTER STRIKING MULTIPLE ALLEGATIONS RELATING TO DEFENDANTS TALBERT AND RINALDI IN PLAINTIFFS' FIRST AMENDED COMPLAINT."

{¶22} "III. THE TRIAL COURT ERRED IN DECLINING JURISDICTION OVER MARCUS WATTLEY'S AND ZACHARY SWEAT'S DEFAMATION CLAIMS ARISING FROM THE SCHOOL BOARD'S RESOLUTIONS TERMINATING THEIR EMPLOYMENT."

I. & III.

{¶23} In Appellants' first and third assignments of error, Appellants contend the trial court committed error in granting Appellees' motion to dismiss. We disagree.

{¶24} We first note that throughout Appellants' brief they refer exclusively to the allegations and averments contained in the *amended complaint* filed on November 15, 2023, in support of their argument that the allegations were sufficient to withstand Appellees' motion to dismiss. As discussed below, we find the trial court did not commit error in denying Appellants' motion for leave to file an amended complaint, and in striking

the amended complaint allegations against Appellees[4]. Accordingly, when deciding issues related to Appellees' motion to dismiss, the May 24, 2023, complaint is the operative pleading.

{¶25} The trial court granted Appellees' Civil Rule 12(B)(6) motion to dismiss. Our standard of review on a Civil Rule 12(B)(6) motion is de novo. *Dover Chem. Corp. v. City of Dover*, 2022-Ohio-2307, ¶ 32 (5th Dist.). "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 60 (1991). In order to dismiss a complaint pursuant to civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144 (1991).

### Statute of Limitations & Judicial Notice

{¶26} The trial court found Appellants' complaint was barred by the statute of limitations. "A complaint may be dismissed under Civ.R. 12(B)(6) for failing to comply with the applicable statute of limitations when the complaint on its face conclusively indicates that the action is time-barred." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 13.

---

[4] On November 16, 2023, the trial court specifically struck from Appellants' First Amended Complaint paragraphs 266, 272, and 279 in their entirety, and those portions of paragraphs 20 and 21 that relate to Appellees.

{¶27} The appliable statute of limitations for defamation is one year.  R.C. 2305.11.  Likewise, the applicable statute of limitations for false light invasion of privacy arising out of the publication of allegedly defamatory statements is one year.  *Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, ¶ 27 (10th).  Lastly, where a plaintiff alleges that a defendant "conspired to defame his good name and reputation," the one-year statute of limitations for defamation applies to a claim of civil conspiracy arising out of the alleged defamation.  *Cramer v. Fairfield Med. Ctr.*, 2009-Ohio-3338, ¶ 69 (5th Dist.).

{¶28}  A cause of action for defamation accrues upon the date of publication of the defamatory matter.  *Id*.  According to Appellants' complaint, the dates of publication of the allegedly defamatory matter were May 28, 2021, June 2, 2021, June 3, 2021, June 9, 2021, and June 24, 2021.  The complaint was filed on May 24, 2023, nearly two years after the dates of publication.  Thus, the complaint is untimely on its face as to the false light and defamation claims.  In their complaint, Appellants allege that Appellees engaged in an "unlawful conspiracy to defame Plaintiffs."  Accordingly, Appellants' civil conspiracy claim - arising out of the alleged defamation - is also untimely on the face of the complaint.

{¶29}  Appellants contend their complaint is timely pursuant to the application of Ohio's Savings Statute, R.C. 2305.19.  Appellants assert they previously filed a complaint against Appellees in the same court and in front of the same judge, which was voluntarily dismissed without prejudice on January 18, 2023.  They argue that, because they filed their complaint within one year of the voluntary dismissal date, their complaint should not have been dismissed based on the expiration of the statute of limitations.

{¶30}  Appellants admit the complaint in this case did not contain the date of the previous case's voluntary dismissal.  Ohio courts, including this Court, have consistently

held that, when considering a Civil Rule 12(B)(6) motion to dismiss, a court cannot go beyond the pleadings to consider the application of R.C. 2305.19. *Allstate Ins. Co. v. Stanley*, 1996 WL 132405 (5th Dist.); *Feagin v. Mansfield Corr. Inst.*, 2007-Ohio-4862 (10th Dist.) *appeal not accepted*, 2008-Ohio-565; *Strother v. City of Columbus*, 2022-Ohio-4097 (10th Dist.); *Omobien v. Flinn*, 2021-Ohio-2096 (9th Dist.); *Rankin v. Rosolowski*, 2016-Ohio-7490 (8th Dist.); *Kennedy v. Heckard*, 2002-Ohio-6805 (8th Dist.), *appeal not accepted*, 2003-Ohio-1946.

{¶31} Here, Appellants included the filing date of the previous case in their complaint. (Compl. ¶ 207). However, Appellants did not include the date they voluntarily dismissed the first complaint (i.e., January 18, 2023) in the May 24, 2023, complaint. The trial court needed the date of the voluntary dismissal to determine whether Appellants timely refiled their complaint pursuant to R.C. 2305.19. In their memorandum in opposition to Appellees' motion to dismiss, Appellants asserted that the trial court, "may take judicial notice of its own docket to confirm that all elements of the savings statute … apply."

{¶32} Thus, the question is whether the trial court committed error in failing to take judicial notice of the January 18, 2023, voluntary dismissal. We review decisions regarding judicial notice under an abuse of discretion standard. *Reichman v. Reichman*, 2002-Ohio-4712, ¶ 23 (5th Dist.). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶33} In this case, we find the trial court properly declined to take judicial notice of previous voluntary dismissal date.

{¶34} When considering a Civ.R. 12(B)(6) motion, a trial court cannot take judicial notice of factual allegations or evidence from court proceedings in another case, absent a few narrow exceptions not at issue here. *State ex rel. Scott v. City of Cleveland*, 2006-Ohio-6573, ¶ 26; *State ex rel. Ames v. Summit Cty. Court of Common Pleas*, 2020-Ohio-354, ¶ 5 (one narrow exception is that "an event that causes a case to be moot may be proved by extrinsic evidence outside the record."); *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997); *Sweeney v. Pfan*, 2019-Ohio-4605, ¶ 14 (5th Dist.); *Evans v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4871, ¶ 5 (10th Dist.); *Charles v. Conrad*, 2005-Ohio-6106, ¶ 22 (10th Dist.); *NorthPoint Properties v. Petticord*, 2008-Ohio-5996 (8th Dist.), *appeal not accepted*, 2009-Ohio-1820; *Strother v. City of Columbus*, 2022-Ohio-4097, ¶ 14 (10th Dist.); *Omobien v. Flinn*, 2021-Ohio-2096, ¶ 13 (9th Dist.); *Kennedy v. Heckard*, 2002-Ohio-6805, ¶ 8 (8th Dist.), *appeal not accepted,* 2003-Ohio-1946;

{¶35} This restriction has been applied to situations where the parties were the same in the prior action. *Miller v. Med. Mutual of Ohio*, 2013-Ohio-3179, ¶ 28 (5th Dist.). The rationale for this restriction is that an appellate court cannot review the propriety of a trial court's reliance on prior proceedings because that record is not before the appellate court. *Id.* Further, as this Court has previously stated, "12(B)(6) limits consideration of matters outside the pleadings to those specifically enumerated in Civil Rule 56. Consideration of evidence taken by judicial notice is not specifically enumerated in Civ.R. 56(C)." *Miller* at ¶ 29; *In re LoDico*, 2005-Ohio-172. ¶ 94 (5th Dist.).

{¶36} While the Supreme Court of Ohio has not directly ruled on the issue of whether a trial court is permitted to take judicial notice of the date of a voluntary dismissal in a previous case to determine whether a refiled complaint, on its face, conclusively indicates the action is time-barred, the Supreme Court has declined jurisdiction to hear cases that have held the trial court could not look outside the complaint to take judicial notice of pleadings in a previous case or take judicial notice of the fact that a previous lawsuit was filed. *Shaut v. Roberts*, 2022-Ohio-817 (8th Dist.), *appeal not accepted*, 2022-Ohio-2246; *In re LoDico*, 2005-Ohio-172 (5th Dist.), *appeal not accepted*, 2005-Ohio-3154; *NorthPoint Properties v. Petticord*, 2008-Ohio-5996 (8th Dist.), *appeal not accepted*, 2009-Ohio-1820; *Kennedy v. Heckard*, 2002-Ohio-6805 (8th Dist.), *appeal not accepted*, 2003-Ohio-1946; *Feagin v. Mansfield Corr. Ins.*, 2007-Ohio-4862 (10th), *appeal not accepted*, 2008-Ohio-565.

{¶37} Most notably, in 2022, the Supreme Court of Ohio declined jurisdiction to hear the following proposition of law: "A Court may take judicial notice of the date of recording, filing, journalization, or publication of any document by any Clerk of a Common Pleas Court … where such date is contained in the public records kept by such Clerk … ." *Shaut v. Roberts*, 2022-Ohio-2246 (Memorandum in Support of Jurisdiction, p.3).

{¶38} In this case, the judicial notice sought by Appellants would have required the trial court to rely on factual allegations outside of the complaint. Such reliance is not permitted under well-established case law. As such, the trial court could not have properly taken judicial notice of the voluntary dismissal when it ruled on Appellees' Civ.R. 12(B)(6) motion to dismiss. Thus, the trial court did not commit error in granting Appellees' motion to dismiss based on the statute of limitations.

***Political Subdivision Immunity***

**{¶39}** The trial court found both Talbert and Rinaldi had political subdivision immunity pursuant to R.C. 2744.02. Appellants argue R.C. 2744.02 is inapplicable to this case because the complaint specifically provides that appellants are suing both Talbert and Rinaldi "in their individual capacities."

**{¶40}** R.C. 2744.01(A) establishes governmental immunity for political subdivisions and their employees. Whether a political subdivision or employee is entitled to this statutory immunity is a question of law for a court's determination. *Dover Chemical*, 2022-Ohio-2307, ¶ 34 (5th Dist.). A school district is a "political subdivision" as defined by R.C. 2744.01(F). Its Board members and Superintendent are "employees" under R.C. 2744.01(B).

**{¶41}** A three-tiered analysis is used to determine whether a political subdivision is immune from tort liability. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557 (2000). The first tier provides a general grant of immunity, as set forth in R.C. 2744.02(A)(1). Once immunity is established under R.C. 2744.02(A)(1), the second tier involves determining whether there exists any exception to immunity pursuant to R.C. 2744.02(B). *Id.* at 557. These exceptions generally include tort claims arising from (1) the negligent operation of a motor vehicle by a school employee; (2) the negligence of a school employee with respect to "proprietary functions"; (3) the political subdivision's negligent failure to keep the public roads in repair and free from obstruction; (4) the negligence of a school employee with respect to physical defects occurring within or on the grounds of school buildings; and (5) civil liability that is expressly imposed by statute

on the political subdivision. R.C. 2744.02(B)(1)-(5). If any of these five exceptions apply, then a consideration of the defenses set forth in R.C. 2744.03 is required. *Id.*

{¶42} Appellants contend the trial court committed error in applying R.C. 2744.02 immunity because, pursuant to the complaint, appellees were sued "in their personal capacity." While personal-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent …". *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). Accordingly, official-capacity suits are "to be treated as a suit against the entity …". *Id.*

{¶43} When a named defendant officer of a political subdivision is sued in his or her official capacity, R.C. 2744.02 applies; where the employee is sued in his or her personal capacity, R.C. 2744.03(A)(6) applies. *Schaad v. Buckeye Valley Local School Dist. Bd. of Edn.*, 2016-Ohio-569, ¶ 32-35 (5th Dist.); *Para v. Jackson*, 2021-Ohio-1188, ¶ 16 (8th Dist.); *Doe v. Adkins*, 2021-Ohio-3389, ¶ 98 (4th Dist.); *Cool v. Brown-Clark*, 2020-Ohio-6968, ¶ 22 (7th Dist.); *Jones v. City of Norwood*, 2013-Ohio-350, ¶ 38 (1st Dist.); *Foster v. Bd. of Edn. of Toledo City School Dist.*, 2025-Ohio-1769, ¶ 16 (6th Dist.).

{¶44} In order to determine in what capacity Appellants have sued Appellees, we must examine the complaint. Appellants are correct that both in the caption and the body of the complaint they state they are suing Appellees "in their personal capacity." However, in construing a complaint to determine the nature of the claim, we look to the substance of the complaint, not the caption or the labels provided in the complaint. *Funk v. Rent-All Mart, Inc.*, 91 Ohio St.3d 78, 80 (2001); *Byers DiPaola Castle LLC v. Portage Cty. Bd. of*

*Commrs.*, 2015-Ohio-3089, ¶ 24 (11th Dist.); *Parmertor v. Chardon Local Schools*, 2016-Ohio-761, ¶ 31 (11th Dist.).

{¶45} In this case, an examination of the substance of the complaint reveals that all the conduct alleged against Appellees occurred within the scope of their official duties as School Board President and Superintendent. Appellants repeatedly and consistently refer, in the complaint, to the actions or alleged conduct of the "district" and "district officials." For example, Appellants accuse the "school district" of "spinning" the investigation as a campaign against antisemitism (Compl. ¶¶ 14-18). Further, Appellants allege, "the district immediately suspended [Appellants] based on the false, wild, and facially implausible accusations against them," (Compl. ¶ 106), and "the district also maintained its refusal to identify a single witness, or produce a single written statement or document supporting its endorsement of the false allegations against the coaches." (Compl. ¶ 161). The complaint includes repeated references to the allegedly false statements and incorrect conclusions that occurred during the *District's* investigation or contained in the *Board's* resolutions. (Compl. ¶¶ 14-18, 103, 111, 133, 142, 143, 145, 186, 187, 232, 233).

{¶46} Appellants aver in their complaint that the allegedly defamatory statement attributed to Rinaldi was made by him, in his capacity as Board President, at a Board meeting. (Compl. ¶ 143). Two of the three allegedly defamatory statements Appellants attribute to Talbert were posted on the District's Facebook page. The complaint states, "On May 28, 2021, the Canton City School District, through Defendant Talbert, released its first substantive public statement about the situation in a public Facebook post entitled, 'An Important Message from the Canton City School District …'". (Compl. ¶ 110). The

citations included in the complaint specifically direct the reader to the District's Facebook page. Compl. ¶¶ 110 at fn. 4 and 130 at fn. 21). As to the allegedly defamatory video statement by Talbert, the complaint specifically refers to the *District's* investigation (Compl. ¶ 169).

{¶47} The complaint fails to aver that any of the alleged defamatory conduct occurred outside the scope of Appellees' official duties and makes clear that all of Appellees' allegedly defamatory conduct occurred specifically while Appellees were fulfilling their roles as Superintendent and/or Board President. Since Appellees' allegedly defamatory conduct occurred while fulfilling their roles official duties as Superintendent and/or School Board President, find the trial court did not commit error in applying the political-subdivision-immunity analysis set forth in R.C. 2744.02.

{¶48} In order to state an actionable tort against a political subdivision, a plaintiff must plead facts sufficient to trigger the application of a R.C. 2744.02(B) exception to immunity. *Bucey v. Carlisle*, 2010-Ohio-2262, ¶ 9 (1st Dist.). Appellants have not pled any facts to trigger the application of any of the exceptions to immunity contained in R.C. 2744.02(B). The conduct at issue had nothing to do with a motor vehicle, public roads, physical defects, or liability expressly imposed by statute. Appellants do not allege the conduct arose from negligence of an employee with respect to a "proprietary function." Further, the hiring, retention, and supervision of a high school coach is an inherent part of the public-school district's government function. *Wilson v. McCormack*, 2017-Ohio-5510 (11th Dist.); *Doe v. Adkins*, 2021-Ohio-3389 (4th Dist.). Additionally, R.C. 3319.16 requires the Board to furnish written notice of the intent to terminate a teacher's contract with full specifications of the grounds for such termination.

**{¶49}** Reviewing the allegations in the complaint, we find it appears beyond doubt that Appellants can prove no set of facts in support of their defamation claims against Appellees. The statements cited by Appellants as allegedly defamatory were made in Appellees' official capacity, and Appellants have not pled any facts to trigger the application of any of the R.C. 2744.02(B) exceptions. Accordingly, the trial court did not commit error in finding Appellees are entitled to immunity pursuant to Ohio Revised Code 2744.01 *et seq.*

### *Defamation, Publishing, False Statement of Fact, Opinion*

**{¶50}** To establish defamation, a plaintiff must show: (1) a false statement of fact was made by the defendant; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication; and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77.

### *Published to Third Parties*

**{¶51}** The third element of a defamation claim is that a statement was published. A statement must be communicated to a third party in order to be actionable as defamation. *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975). In a complaint, a plaintiff must aver the identifiable third party to which the defendant allegedly published the statement. *Id.*

**{¶52}** With regard to the "draft resolution," Appellants assert in the complaint that, along with written notice of a pre-cause hearing for termination, "Wattley received … a draft resolution" attached to the notice. (Compl. ¶ 133). Appellants assert this "draft

resolution" was unanimously approved by the Board, and (Compl. ¶ 142) and "sent to the school district board members for consideration."  (Compl. ¶ 256).

{¶53}  Appellants argue this "draft resolution" was published because it is an official public record and because Talbert "published" the draft resolution to the Board members.  However, simply because a document is a record that *could* be the subject of a public records request is not sufficient to demonstrate it was published to a third party. *Missionaries of the Sacred Heart, Inc. v. Ohio Dept. of Youth Services*, 2020-Ohio-5596, ¶ 29 (10th Dist.).  "A possible future communication of the defamatory matter to a third party is not a publication for purposes of a defamation claim."  *Id.*  As to the Board members, they are not alleged as "third parties" in the complaint and are, in fact, not "third parties" as it pertains to the draft or official resolutions because, pursuant to the Ohio Revised Code, the Board is the entity that formally makes employment decisions, terminates employment contacts on behalf of the District, and is statutorily required to furnish the employee full specifications of the grounds for termination.  R.C. 3313.17; R.C. 3319.16; see *Hull v. Cuyahoga Valley Joint Voc. Sch. Dist. Bd. of Edn.*, 926 F.2d 505 (6th Cir. 1991).

{¶54}  Appellants also fail to allege to whom Appellees allegedly "published" the official resolutions.  Appellants allege news crews and the public attended at least one of the board meetings, but it is not clear which meeting, and not clear the public or news crews actually were provided the resolutions by Talbert. (Compl. ¶ 141).  The complaint simply stated that Talbert "caused these resolutions to be published." (Compl. ¶ 189).  Appellants do not allege that either Talbert or Rinaldi published the Board's resolutions to an identifiable third party.  *Quamme v. Lancaster-Fairfield Comm. Hosp.*, 1995 Ohio App.

LEXIS 1370 (5th Dist.). Additionally, because the full text of the resolutions was not contained in or attached to the complaint, Appellants do not clearly set forth what Talbert allegedly published about each individual Appellant.

{¶55} Further, the complaint also specifically states that it was the *Board* who voted on and officially adopted and approved the resolutions (Compl. ¶¶ 141, 142, 186, 187, 258). Appellants certainly allege that television media and various newspapers *reported on* the resolutions. However, unlike in the *Mehta* and *Mallory* cases cited by Appellants, there is no assertion that it was Talbert or Rinaldi who actually provided the media with the resolutions and/or that Talbert or Rinaldi otherwise spoke or provided additional statements to them. *Mallory v. Ohio Univ.*, 2001-Ohio-8762 (10th Dist.) (university official wrote a letter to a newspaper reporter and made comments during an interview with the reporter that the plaintiff committed sexual battery despite his acquittal of the charge by a jury); *Mehta v. Ohio Univ.*, 2011-Ohio-3484 (10th Dist.) (two members of university held press conference to present their own "report," which differed from the university's official report of investigation, and specifically spoke with reporter to comment on their separate investigation). In fact, the complaint specifically alleges that Talbert actually *declined* comment to media outlets and would not provide the media outlets the videotape of the incident due to privacy reasons. (Compl. ¶ 151).

{¶56} We find the trial court did not commit error in dismissing Appellants' complaint as it pertains to both the "draft resolution" and the official resolutions because the complaint fails to allege operative facts identifying a third party to whom Talbert and/or Rinaldi published either the "draft resolution" or the official resolutions.

*For Which Defendant is Responsible*

{¶57}  The Supreme Court of Ohio has held that, in order to set forth a prima facie case for defamation, a plaintiff must establish publication to a third party *for which defendant is responsible.*  *Hahn*, 43 Ohio St.2d at 243.

{¶58}  As mentioned above, there are no allegations in the complaint that Talbert provided the media, the public, or any other identifiable third-party with the official resolutions.  Moreover, Talbert is not "responsible" for the official resolutions because, as specifically stated in the complaint, it was the *Board* who voted on and officially adopted and approved the resolutions (Compl. ¶¶ 141, 142, 186, 187, 258).  *Green v. Mason*, 504 F.Supp.3d 813, 834 (S.D. Ohio 2020) (defendant is "not responsible for writings published by others").  To be sure, this is another reason why Talbert cannot be liable for defamation in publishing the official resolutions.

*False Statements of Fact & Opinion*

{¶59}  The first element of a defamation claim is that a defendant must assert a false statement of fact.  *R. James Amaro, P.C. v. DeMichael*, 2024-Ohio-3290, ¶ 17 (5th Dist.).  Whether the language is an actionable statement of fact is a question of law to be decided by the court.  *Id.*  "Truth is a complete defense to a claim of defamation."  *Spitzer v. Knapp*, 2019-Ohio-2701, ¶ 39 (5th Dist.).  Moreover, under the innocent construction rule, defamatory meanings are rejected if an innocent meaning is available.  *Hamilton v. Gannett Co.*, 2020-Ohio-6771, ¶ 27 (5th Dist.).

{¶60}  Expression of opinion is generally immune from liability under the Ohio and U.S. Constitution.  *Mehta* at ¶ 27.  Statements that are "loosely definable" or "variously interpretable" cannot support an action for defamation.  *Id.*  As a matter of law, a statement

of opinion – statements that are objectively incapable of being proof or disproof - cannot be proven false, thus negating a required element of a defamation cause of action. *Wampler v. Higgins*, 2001-Ohio-1293. A statement of opinion, no matter how derogatory, unjustified, or unreasonable, is not actionable. *Frigo v. UAW Local 549*, 2005-Ohio-3981,¶ 30 (5th Dist.). The determination of whether alleged defamatory matter is a statement of opinion is a question of law to be decided by the trial court. *Id.*

{¶61} In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. *Spitzer* at ¶ 34. Consideration of the totality of the circumstances involves at least four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared. *Scott v. News-Herald*, 25 Ohio St. 3d 243, 250 (1986).

{¶62} Regarding the May 28, 2021, Facebook post, the statements therein do not name any of the Appellants by name and do not make any specific accusations of misconduct. There is no false statement of fact, as the truth of the statements is confirmed in the complaint [accepting all factual allegations of the complaint as true]. The complaint establishes the following as true and/or actually occurred: the safety of the students is a top priority for the school (Compl. ¶¶ 32, 44, 48-49, 61); an incident occurred during a training session (Compl. ¶ 88); the District immediately suspended appellants while the District conducted an investigation (Compl. ¶¶ 8, 103, 109); the District was almost done with the investigation (Compl. ¶ 109); the football program has an impressive history (Compl. ¶¶ 32); and the staff is held to high standards (Compl. ¶ 44). Further,

under the totality of the circumstances, the word "concerning" and phrase "calls into question" are statements of opinion that are "loosely definable."

{¶63} The June 2, 2021, Facebook post repeats several of the statements contained in the first Facebook post.  Again, as detailed above, these are either true statements or statements of opinion issued by the District in connection with its duties pursuant to R.C. 3319.16.  The additional statements in the June 2nd post, which are confirmed as true by the complaint, include: the initial investigation is concluded (Compl. ¶ 186); the District filed a police report (Compl. ¶ 259); and the investigation found the coaches engaged in actions that constituted inappropriate, demeaning, and divisive behavior in a misguided attempt to instill discipline in student athletes (Compl. ¶¶ 186, 187).

{¶64}  Similarly, in the June 9, 2021, video, many of the statements are repeats of the previously noted Facebook postings.  The additional statements, including the factual statements regarding the timeline of events, the actions taken during the investigation, the findings of the investigation, and the District's decisions, are true, and the complaint does not allege them to be false.  These truthful statements include: the District spoke with a number of student athletes during the investigation (Compl. ¶¶ 17, 176); the District viewed security footage during the investigation (Compl. ¶¶ 156, 237); the investigation concluded that the video shows the coaches engaged in inappropriate, demeaning, and divisive behavior in a misguided attempt to instill discipline in the students (Compl. ¶ 187); the District filed a police report and sent the investigation report to the Ohio Department of Education; the investigation concluded the behavior of the coaches were inappropriate, demeaning, and divisive behavior unbecoming of the teaching profession (Compl. ¶¶ 142,

186, 187); the investigation concluded the coaches actions demonstrated extraordinarily poor judgment (Compl. ¶ 186); and the investigation concluded that, based on their actions, the coaches could no longer be coaches with the District (Compl. ¶¶ 10, 186).

{¶65} Though Appellants did not include the entirety of the transcript of the beginning of Talbert's June 9, 2021, video statement, Appellants allege Talbert "portrayed" the District's investigation as "extensive, comprehensive, objective, and conclusive," and that Talbert stated the video was to "set the record straight on how these events truly transpired." Further, that "Talbert accused the coaches and the undersigned attorneys of 'purposely providing false and inaccurate information to news sources about the district's decision to terminate the coaches, without identifying a single piece of any such information.'" Of course, the attorneys representing Appellants are not parties in this action; thus, what Talbert said about them is irrelevant. Further, Appellants are not individually named in the statement, the only term used is the general term of "coaches." Finally, to the extent that any of the statements actually identify any specific plaintiff, upon a totality of the circumstances analysis, the statements are opinions and judgment calls made in connection with the Board's official duties of investigation, hiring, and decision-making.

{¶66} The entirety of Rinaldi's statement is not contained in the complaint. However, the portions provided in the complaint are not false statements of fact because Rinaldi simply stated that Appellants were terminated as a result of the investigation, and Rinaldi confirmed the conclusions of the investigation. The remainder of the allegations in the complaint confirm that: (1) appellants were terminated due to the investigation (Compl. ¶¶ 10, 187) and (2) the District's official investigation found the coaches engaged

in actions that constituted inappropriate, demeaning, and divisive behavior (Compl. ¶ 187). Further, as to Rinaldi's statement that the District "filed a police report as a result of the investigation," appellants do not dispute that the District filed a police report. Thus, none of the Rinaldi's statements are false statements of fact. Appellants fail to meet the first prong of the defamation standard.

{¶67} Appellants cite this Court's decision in *East Canton Education Association v. McIntosh*, 1997 Ohio App. LEXIS 3957 (5th Dist.), in support of their argument that simply couching something as "opinion" does not preclude a finding that something is a false assertion of fact. We find the law in *McIntosh* regarding "totality of the circumstances" appliable to this case, but find the totality of the circumstances in this case, as opposed to those in *McIntosh*, compel a different conclusion. Most obviously, the *McIntosh* case involved an education association, unlike the actual Board and District involved in this case. Additionally, in *McIntosh*, the "statement" included several instances in which the reader stated he personally observed or investigated something, or it was "just plain wrong" for the plaintiff to do certain things. In this case, there are no such averments that Talbert or Rinaldi stated anything they "personally" reviewed or classified anything as "just plain wrong." The statements by Talbert simply explain the timeline of the investigative process and report on the Board's conclusions.

{¶68} The statements at issue describe the investigative process and explain the overall findings of the investigation. Unlike the tenor of the statements in *Mehta* (the tenor of the report was "a call to action"), the tenor of the statements issued by Talbert is a factual one, i.e., a recitation of the investigative process and the result of the investigation. The statements do not mention any individual Appellant by name. Unlike in *Mallory*, none

of the statements involve a direct accusation of criminal activity of a specific individual. Rather, the statements describe the investigatory findings, which the complaint does not dispute occurred. Appellants explicitly and specifically acknowledge in the complaint that the District conducted an investigation and terminated their employment based on the outcome of that investigation. (Compl. ¶¶ 103, 152, 186).

{¶69} To be sure, Appellants vehemently disagree that the evidence supported the District's investigative conclusions. While the conclusions and/or the investigatory process may be challenged in a wrongful termination claim or through the administrative process, whether the evidence supports the District's investigative conclusions is not relevant to the claims pled, or to our analysis, in this case. Appellants do not challenge the *existence* of the conclusions from the investigation. Rather, they confirm in their complaint that the District actually did make these conclusions as a result of the investigation. Since Appellees' comments merely restate the conclusions of the investigation, those comments are truthful and accurate.

{¶70} Throughout the complaint and in their briefing, Appellants allege that by failing to "disavow" statements made by other defendants in the case (specifically Attorney Gilbert, who stated that the coaches "forced the player to eat pork against his religious beliefs"), Appellees' statements about the investigation were defamatory through a set of omissions, inferences, and implications. However, nothing in any of the allegedly defamatory statements refers to the religious beliefs of the student, the forced eating of pork, anti-Semitism, or any of the other accusations allegedly made by the remaining defendants.

{¶71} Appellants ask this Court to make the following inferences: (1) by failing to specifically refute or disavow the statements by Gilbert and the other defendants, an inference or implication that Appellees "endorsed" the statements; (2) by implicitly "endorsing" the statements by Gilbert and the other defendants, an inference that the Board's investigation revealed facts undisclosed by Appellees proving Appellants acted in a willful or wanton manner to cause risk of harm to K.W.; (3) an inference from the lack of Talbert or Rinaldi presenting the "undisclosed facts" showing Appellants acted in a willful or wanton manner, that Talbert and Rinaldi conducted a "sham" investigation designed to replace Wattley with their personal friend, Antonio Hall; and (4), in order to meet the "actual malice" standard required to overcome the privilege, Appellants admit the statements enjoy (a qualified privilege) (Appellants' Brief, p. 42) an inference that Talbert and Rinaldi knew this "sham" investigation would have a "destructive impact" on Appellants' football coaching careers.

{¶72} It is true that, in our review of a Civil Rule 12(B)(6) dismissal, we construe any reasonable inferences in favor of the party opposing the motion to dismiss. However, "stacking these inferences upon one another" is improper. *Main v. City of Lima*, 2015-Ohio-2572, ¶ 20 (3rd Dist.); *Deutsche Bank Nat'l Trust Co. v. Mallonn*, 2018-Ohio-1363, ¶ 38 (5th Dist.) (must reject invitation to stack an inference upon an inference as impermissible). In order to find a defamation claim from Appellants' complaint, we must: 1) infer from the absence of a repudiation of Gilbert's statement in either Talbert or Rinaldi's statements that they "endorsed" Gilbert's statement; 2) infer that because Talbert and Rinaldi "endorsed" this statement, the investigation revealed undisclosed facts proving Appellants willfully and wantonly caused risk of harm to K.W.; 3) infer that,

because no undisclosed facts showing wanton or willful behavior on the part of Appellants actually existed, Talbert and Rinaldi conducted a "sham investigation" orchestrated in order to vindicate their personal interests by replacing Wattley with their friend; 4) and make a fourth inference that Appellees knew this "sham" investigation would have a "destructive impact" on Appellants' football coaching careers.

{¶73} This is improper inference-stacking. We decline to base inferences upon inferences to conclude Appellants can prove a set of facts in support of their defamation claim that would entitle them to relief against Appellees. Rather, because it appears beyond doubt that Appellants can prove no set of facts that would entitle them to relief against Appellees on their claims, the trial court properly dismissed the complaint pursuant to Civil Rule 12(B)(6).

{¶74} The complaint and Appellants' brief make clear that the defamation, false light invasion of privacy, civil conspiracy, and spoliation claims arise out of the same conduct, and Appellants cannot, if their defamation claim fails, sustain any of the remaining claims. Appellants' first and third assignments of error are overruled.

II.

{¶75} In their second assignment of error, Appellants contend the trial court committed error in denying their motion to amend the complaint and in striking the portions of the amended complaint dealing with Appellees. Appellants argue they should have been permitted to correct the "technical defect" omitted from the initial complaint and contend no prejudice to Appellees would have occurred because the case was not pending for an extended length of time and the amended complaint would cure only "technical defects." We disagree.

{¶76} This Court reviews a trial court's decision on a motion for leave to file an amended pleading under an abuse of discretion standard. *Wilmington Steel Prods., Inc. v. Cleveland Electric Illuminating Co.*, 60 Ohio St.3d 120, 122 (1991). An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). While Civil Rule 15(A) allows for liberal amendment, the trial court does not abuse its discretion if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *New Lexington City Sch. Dist. Bd. of Edn. v. Muzo Inv. Group, LLC*, 2016-Ohio-1338, ¶ 30 (5th Dist.)

{¶77} We find the trial court did not abuse its discretion in finding undue delay and/or prejudice would result if Appellants were permitted to amend their complaint with regard to Appellees. First, Appellants did not seek leave to file an amended complaint until after the trial court issued its judgment entry dismissing their complaint pursuant to Civil Rule 12(B)(6). Courts, including this Court, have held that a trial court does not abuse its discretion in denying a motion to amend a complaint once a motion to dismiss has been granted. *Reichert v. Lauren Int.'l Ltd.*, 2012-Ohio-4731 (5th Dist.) (no abuse of discretion in denying motion to dismiss when motion was not filed until 6 days after dismissal of parties); *Miller v. Med. Mutual of Ohio*, 2013-Ohio-3179 (5th Dist.) (plaintiff did not attempt to amend their complaint before defendant filed motion to dismiss); *Hutcheson v. Ohio Auto Dealers Assn.*, 2012-Ohio-3685 (8th Dist.); *Gore v. Mohamod*, 2022-Ohio-2227, ¶ 19 (10th Dist.) ("significantly, she did not move for leave to amend her complaint … before the trial court ruled on that motion"); *Patterson v. Novartis Pharmaceuticals Corp.*, 451 Fed.Appx. 495, 499 (6th Cir. 2011). Additionally, we have

found that an attempt to amend a complaint following the filing of a motion to dismiss or motion for summary judgment "raises the specter of prejudice." *Wilson v. Mercy Med. Ctr.*, 2015-Ohio-3928 (5th Dist.).

{¶78} On July 21, 2023, the date Appellees filed their motion to dismiss, Appellants were put on notice that voluntary dismissal date of the previous case was not contained in their complaint. To be sure, Appellants had 109 days from the date Appellees filed their motion to dismiss, and 59 days from the close of the briefing on the motion to dismiss, to file their motion to amend. They chose not to do so until eight days after the adverse ruling dismissing both Talbert and Rinaldi. "Where information was relied upon in seeking leave to amend should have been known to [a party] earlier, the delay can be considered unjustified." *Scott Holding Co. v. Turbo Rests. U.S., LLC*, 2024-Ohio-5240 (5th Dist.), quoting 2020-Ohio-5019.

{¶79} Because we find the trial court did not abuse its discretion in denying Appellants' motion for leave to file an amended complaint, it was proper for the trial court to sua sponte strike portions of the amended complaint. *McDonald v. Abdella*, 2018-Ohio-4125 (10th Dist.). Appellants' second assignment of error is overruled.

### *Conclusion*

{¶80} In conclusion, upon our de no review, we find the trial court did not commit error in dismissing appellants' defamation and false light claims based upon three independent basis, each of which standing alone would be sufficient to grant the motion to dismiss. First, the claims are barred by the statute of limitations. Second, Appellees enjoy immunity pursuant to R.C. 2744.02. Third, Appellants failed to plead facts sufficient to meet the four prongs required for a defamation claim.

{¶81}   While the trial court additionally found the official resolutions were protected by absolute privilege and/or the defamation claims were preempted by the Collective Bargaining Agreement, we need not address these issues, as there are sufficient other independent grounds to affirm the trial court's dismissal of the complaint.

{¶82}   At oral argument, Appellants conceded that, if their defamation and false light claims fail, the remainder of their claims also fail.  Additionally, in their brief, Appellants only request this Court reverse the trial court's dismissal of their defamation and false light claims (Appellant's Brief, p. 58).

{¶83}   We additionally find the trial court did not abuse its discretion in denying Appellants' motion to amend complaint and in striking the portions of the amended complaint dealing with Appellees.

{¶84}   Appellants' assignments of error are overruled.

For the reasons stated in our Opinion, the judgment entries of the Stark County Court of Common Pleas are affirmed.

Costs to Appellants.